ROBINSON, Plaintiff-Appellee, v. REPUBLIC STEEL
CORPORATION, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20600.  Decided January 12, 1948.

Payer, Bleweiss & Mollison, Cleveland, for plaintiff-ap-
pellee.

McKeehan, Merrick, Arter & Stewart, Cleveland, for de-
fendant-appellant.

**OPINION**

By MORGAN, J.

The defendant, The Republic Steel Corporation, as an agent of the Defense Plant Corporation, entered into a contract with The Western Foundation Company by which the latter agreed to drive piles as footings for a blast furnace to be constructed on Campbell Road, Cleveland, Ohio. The Western Foundation Company brought to the job a "Marion 21 Pile Driving Rig" which had originally been designed as a steam shovel.

The plaintiff was employed to operate the "Marion 21" and on July 25, 1942, while it was being operated it overturned, causing the plaintiff to be pitched out of the cab of the crane and down twenty feet sustaining severe injuries.

The plaintiff brought this action against The Republic Steel Corporation and the Defense Plant Corporation, alleging that plaintiff's injuries were caused by the negligence of these two companies. At the conclusion of the evidence, on motion, the Defense Plant Corporation was dismissed from the case by the court and the jury gave a verdict for the plaintiff and against the defendant, The Republic Steel Corporation, for $21,000.00 from which judgment the defendant appeals.

The principal claim of defendant is that the plaintiff was employed by an independent contractor, The Western Foundation Company, and that under the principles of law applying to independent contractors, the defendant is not liable.

The plaintiff rests his right to recover against The Republic Steel Corporation in this case on three propositions: (1) The Republic Steel Corporation directly issued the orders for and personally participated in performing the negligent act which caused the crane to tip and is therefore liable by reason of meddling interference and direct participation; (2) The Republic Steel Corporation under its contract with the Western Foundation Company had the right to specify the mode and manner of equipment to be used in the work. The "Marion 21" was a defective crane and notice of its defects had been brought to the attention of the defendant which is liable by reason of its failure to order the removal of the unsafe and defective equipment; (3) When it became apparent to The Republic Steel Corporation that its sub-contractor, The Western Founda-

tion Company, was using dangerous and unsafe equipment it became its duty to act to prevent such use.

A boom 40 feet long was attached to the boom arm of the pile driver and there were fixed hammer leads 65 feet long, the tops of the hammer leads extending 25 feet above the top of the boom. These leads were metal tracks in which a five ton hammer travelled. To make suitable footings the piles were being driven at a thirty degree angle. The length of the piles was from 38 to 46 feet.

It is plaintiff's claim that one Huffman, an engineer and employe of the defendant, designated by marking with yellow chalk the pile to be next driven. The pile so directed by defendant's employe to be raised at this time into the hammer leads was 52 feet in length. In order to accommodate this 52 foot pile it was necessary that the hammer be raised higher in the hammer leads than it had ever been elevated before. This was the first 52 foot section of pile which had been driven on that job by that machine and it was the first time that the hammer had been raised to the top of the 65 foot leads elevated at an angle of thirty degrees from vertical. When the pile had been centered in the hammer leads the loft man, an employe of The Western Foundation Company, called "hammer down". Huffman then gave a hand signal to plaintiff to let the hammer descend. The plaintiff then eased the hammer down by releasing the foot brake slowly so that the hammer could slide down the leads or hammer tracks by gravity.

Later Huffman gave the plaintiff a hand signal to stop the descent of the hammer and plaintiff applied the hammer brake. As the brake was applied there was a slight jar and the pile driving rig tipped over and the boom and hammer leads crashed to the ground.

Thomas Forsythe was an assistant superintendent in charge of pile driving for the Hunkin-Conkey Construction Company on the same job. He testified that he had many years of experience in building, designing and remodelling pile driving cranes and that he had observed the operation of the 'M 21' rig about five or six times a day for a month before the accident. In his opinion the 'M 21' was overloaded, top heavy and unsafe for the work for which it was being used. He testified that it was dangerous and improper to drive a 52 foot pile in that overloaded rig at a thirty degree batter because the hammer was forced to travel so far up and out that the rig would be overturned by the slightest jar.

Edward Wick, a Hunkin-Conkey Construction Company employee with 26 years experience in pile driving, also testified

that the rig was overloaded by taking the hammer to the top of the 65 foot hammer leads which were set at a 30 degree angle.

The field engineer of the Republic Steel Corporation named Metcalf, was accustomed to call safety meetings and representatives of all sub-contractors were summoned to the meetings. Metcalf presided as chairman. Forsythe testified that in the latter part of June, 1942, about a month before the accident, he was present at such a safety meeting and in the meeting spoke as follows about the 'M 21' rig:

"I said, 'Well, what do you think about that Marion there? Do you think that is a safe place to work?'

He said, 'what do you mean it isn't safe?'

I says, 'well, it is overloaded, it is topheavy, the least little tip, you don't know, it will just quiver, when you get that hammer clean to the top it is liable to roll the thing over.' I said, 'I don't call that very safe.'

Q. To whom did you address your statements?

A. To Mr. Metcalf.

Q. Of Republic Steel?

A. Of Republic Steel.

Q. Now, what if anything did Mr. Metcalf say?

A. Well, he said, 'they are doing it, it ain't rolled yet.' I said, 'well it ain't never rolled yet but watch out; there will some fellow take that just a foot or two too high up, right to the head block, and just right there is the tipping point.'"

Wick also testified that he considered the 'Marion 21,' machine unfit for batter or angle pile driving.

"Q. Now, Mr. Wick, at the time Western was putting those long leads on that and had rigged this Marion 21 crane up for driving batter pile, did you make any report to Mr. Metcalf of Republic Steel about that condition and if so what did you report?

A. Yes, I spoke to him about it, but this had been done after I had condemned the crane.

Q. Yes? Well, what did you say about it?

A. I told him that I thought it was a dilapidated contraption that it couldn't do the work.

Q. Mr. Wick, putting the question this way: Did you report to Mr. Metcalf of The Republic Steel that you disapproved this particular rig as it was rigged up with those 65 foot leads for use as a batter pile driver?

A. I did."

Most of the evidence of Forsythe and Wick as given above was denied by defendant's witnesses. However, the truth or falseness of their evidence was for the jury to determine.

Shearman & Redfield's Law on Negligence, (Rev. Ed) Vol. 1, Sec. 179 at page 419, reads:

"Another exception to the rule of the employer's exemption from liability for the negligence of an independent contractor will be found in cases where the 'employer personally interferes with the work and the acts performed by him occasion the injury.' The foregoing statement would seem to constitute a circuitous trip around the simple proposition that any person may be held responsible for his own wrongdoing."

21 O. Jur., Sec. 22, p. 646, 647:

"* * * Or, assuming that the contractor is independent, and that he has full control over the work, the employer's liability may be based on his meddling and he will be held liable for the results of such intereference * * *."

McGrath v. Penn. Sugar Co. (1925) 292 Pa. 265, 127 Atl. Par. 6 of syllabus:

"6. An original contractor is liable for injuries to employee of independent contractor where caused by failure of former to keep premises in good condition or by neglect of orders given for protection of employee or by interference of original contractor or his agents, amounting to assumption of control and direction of work of employees."

Three of plaintiff's witnesses testified that Huffman, the Republic Steel Corporation field engineer, marked and ordered the 52 foot pile into the leads and afterwards gave the order for the hammer to be lowered and then stopped, at which time the crane overturned. Huffman denied giving the orders and testified that he was eating his lunch forty feet away at the time of the occurrence. This again presented a jury question.

Plaintiff also maintains that under the contract between defendant and The Western Foundation Co., the former had the right to exercise control over the equipment used by the latter company.

Article 1 of the contract provides:

"The contractor shall furnish materials, labor and equipment and perform the work for the driving of piles on a site to be provided by Owner at or in the vicinty of Cleveland, Ohio, all in accordance with the drawings and specifications to be furnished by the Agent * * *."

Article 7 provides:

"* * * Contractor shall at all times during the progress of the work, keep at the site thereof a qualified representative satisfactory to Owner, who shall receive and execute on the part of Contractor such * * * directions and instructions as Owner or Agent may give. * * *."

Metcalf who was in charge of the work for defendant testified concerning the right of defendant to control the equipment as follows:

"Q. Well, in addition you were the head of all safety on the job because you called the safety meeting?
A. That is right. I called the safety meetings and got the opinions of the men that work on the various pieces of equipment and around the job, to see that the job was in a safe condition.
Q. Now, if somebody had called your attention to a dangerous defect in a piece of equipment at such a safety meeting, you knew that you had the right and power to give directions and instructions to the contractor to correct the danger, didn't you?
A. I would give instructions to him. That is right.
Q. Yes sir, and you had that right didn't you?
A. That is right.
Q. And if you went out yourself on that job and you saw a dangerous piece of equipment you had the right to tell him to pull that off of there and not endanger the lives of men didn't you?
A. That is right."

It would seem from the evidence given above that the question of the participation in the operation and control over the equipment by defendant would present a jury question. Defendant attempts to avoid this result by reasoning that is more ingenuous than sound.

Defendant's 16th assignment of error is as follows:

"The facts shown by the record and the law of this state clearly show that defendant appellant is entitled to final judgment in its favor by reason of the Workmen's Compensation Law of the State of Ohio."

The 4 and 5 assignments or error are as follows:

"4. The judgment of the court of common pleas should have been for the Republic Steel Corporation for the reason that the evidence in this case establishes that Western Foundation Co., was an independent contractor and had exclusive control over the manner and method of performing the work of driving piles, including the furnishing of labor, material, the pile driver and other equipment necessary to perform the work.

5. The court erred in failing and refusing to determine as a matter of law that Western Foundation Co., was an independent contractor."

The 16th assignment of error contending that defendant is entitled to final judgment "by reason of the Workmen's Compensation Law of the State of Ohio" is quite inconsistent with its 4th and 5th assignments of error.

Defendant states in its brief that "if Western Foundation Co., was not an independent contractor The Republic Steel Corporation is entitled to final judgment in its favor as a matter of law" by reason of the Workmen's Compensation Law.

Defendant in taking this position overlooks the fact that The Western Foundation Co., could be an independent contractor and at the same time defendant might participate in its operations and reserve certain rights over the equipment used by the independent contractor.

Defendant's claim that plaintiff was its employe is wholly without foundation. No such defense is set up in defendant's answer and the case was tried throughout in the trial court on the basis that plaintiff was an employe of an independent contractor, Western Foundation Co.

No charge was given by the court to the jury regarding plaintiff's status as an employee of defendant and no such request to charge was made by defendant. It is evident that the claim is now advanced by reason of the fact that the jury has returned a verdict for plaintiff.

The evidence is uncontradicted that plaintiff was hired and paid by The Western Foundation Company.

Under §1465-60 GC and 1465-61 GC the Western Foundation Company was the employer and the plaintiff was its employé.

The reservation by defendant of the control of the mode and manner of equipment used in the performance of the work by The Western Foundation Company and the participation by defendant in the operation of the equipment could not make the defendant plaintiff's employer, as the reservation of such right could not create or constitute a contract of hire between plaintiff and defendant within the meaning of the Workmen's Compensation Law. The defense that it was the employer and had complied with the Workmen's Compensation Law was available only to The Western Foundation Company and not to defendant.

The other principal assignments of error have to do with the granting and refusal of charges before argument and the general charge.

In charging the jury, the trial judge stated:

"Now, in effect, then the Republic Steel Corporation denies any hiring of this man and denies that he worked for it, but says, on the contrary, that he worked for The Western Foundation Co., a separate corporation; that the Western Foundation Co. furnished all of the material and the appliances to be used by the plaintiff in the operation of driving piles into the ground. They, therefore, say that they had nothing whatsoever to do with it and were consequently not responsible for his injuries. That brings up the question of whether or not Western Foundation Co. was an independent contractor. You are instructed on that subject as a matter of law that when work is contracted to be done by a contractor and the owner or employer retains or exercises no control over the mode or manner or the appliances to be used in doing the work, and the work in and of itself is not dangerous but only becomes so by or through the negligence of the contractor, then the owner or agent of the owner, as in this case The Republic Steel Corporation, would not be liable for injuries resulting from the negligence of the contractor. In other words, if the independent contractor, The Western Foundation Company was not subject to the control and direction of the Republic Steel Corporation, the agent of the Defense Plant Corporation, as to the manner of doing the work and the appliances used in doing the work, and the acts charged as the cause of injuries were the acts of the independent contractor, then the Republic Steel Corporation the agent would not be liable under those circumstances."

The trial judge also stated to the jury:

"I charge you it is the law of this case that if you should find from a preponderance of the evidence that the Republic Steel Corporation, in the contract with the Western Foundation, did not retain control over the mode and the manner in which the work of pile driving was to be performed by Western Foundation and that the Republic Steel Corporation did not interefere with or assume control over the particular operation which occasioned the injuries to plaintiff complained of, then the Republic Steel Corporation would not be liable to the plaintiff and your verdict in that case would be for the defendant."

We find also that in granting and refusing the requests to charge before argument made by both plaintiff and defendant, the court was guided by the above principles set forth in his general charge.

In our opinion the issues in this case were fairly presented to the jury by the trial court and there is evidence to support the verdict. This was a hotly contested case. Many objections to evidence were made in the course of the trial. In reading the record we are impressed with the fairness and the good sense and judgment of the trial court in passing upon these objections as well as in his general charge to the jury.

There is one other assignment of error which should be mentioned.

"11. The verdict of the jury is excessive and appears to have been rendered under the influence of passion and prejudice."

The verdict in this case was not excessive in view of the fact that the plaintiff sustained serious injuries, and the verdict of the jury is not greatly in excess of the wages lost by plaintiff between the date of the accident and the time of trial.

The majority of this court are of the opinion that the judgment should be affirmed.

HURD, PJ, concurs.
SKEEL, J, dissents. (See dissenting opinion)

### DISSENTING OPINION

SKEEL, J. (Dissenting)
This action comes to the court on questions of law from a judgment for the plaintiff entered in the Common Pleas

Court. The plaintiff was employed as an operating engineer by The Western Foundation Company. The Western Foundation Company prior to July 25, 1942 entered into a contract with The Republic Steel Corporation as agent of The Defense Plant Corporation to "furnish materials, labor and equipment and perform the work for the driving of piles on a site to be provided by owner at or in the vicinity of Cleveland, Ohio, all in accordance with the drawings and specifications to be furnished by the agent."

In carrying out its contract with The Republic Steel Corporation as agent for the Defense Plant Corporation, The Western Foundation Company, together with other equipment, delivered to the place where the pile driving was to be done a "Marion M21" steam shovel which had been converted into a pile driver in accord with the instructions of the president and general superintendent of said Western Foundation Company. The plaintiff, as an employe of The Western Foundation Co., was assigned to operate this pile driver. As redesigned to be operated as a pile driver, the boom had been removed or replaced by one forty feet long to which was attached hammer leads sixty-five feet in length and which extended twenty-five feet above the top of the boom. The hammer leads formed a track in which the five-ton steam hammer travelled as the force of its blows were expended in driving the piling.

The plan of the foundation that was being constructed by the driving of these piles required that the piles be driven at an angle of thirty degrees. For the purpose of seeing that The Western Foundation Company carried out its obligations under the contract in an acceptable way, the contract provided that:

"The contractor shall at all times during the progress of the work, keep at the site thereof a qualified representative, satisfactory to owner, who shall receive and execute on the part of contractor such notices, directions and instructions as owner or agent may give. * * *"

The first paragraph of the contract provides:

"Owner shall designate a responsible field representative."

The record discloses that while the pile driving rig which the plaintiff was operating was being used to set a pile in place for driving, the rig upset, throwing the plaintiff out on to the superstructure, whereby he received severe personal injuries.

From the judgment entered for the plaintiff upon the jury's verdict, the defendant appeals, claiming:

1. That the judgment is contrary to law and manifestly against the weight of the evidence and was influenced by passion, prejudice and sympathy.

2. That the court erred in overruling defendant's motion for judgment at the end of plaintiff's case and at the conclusion of the taking of all of the evidence in the case.

3. That the court erred in failing to rule that The Western Foundation Company was an independent contractor as a matter of law and in submitting that question to the jury.

4. That the verdict was excessive.

5. That the judgment should have been for the defendant for the reason that plaintiff was an employe of The Western Foundation Company an independent contractor, who had complete supervision and control over the manner and means by which the work was to be done.

6. Misconduct of plaintiff's counsel and for the court's refusal to grant defendant's motion to discharge the jury for the reason that there was no evidence of heart condition and such claim was not pleaded.

7. In failing to give defendant's request to charge Nos. 3, 5, & 6, and in giving plaintiff's requests Nos. 1 and 2.

The legal theories upon which the plaintiff depends for the right to recover in this case are three in number.

The first claim is that one of defendant's servants gave the signal and participated in the negligent acts which caused the pile driver that plaintiff was operating, to turn over and that defendant is therefore legally liable by reason of its meddling interference and direct participation in the work, even though the work was being accomplished through the agency of an independent contractor; and second, it is the claim of plaintiff that by the contract between The Republic Steel Corporation and The Western Foundation Company, the defendant had the right to specify the mode and manner of equipment to be used and therefore was negligent in failing to order the removal of the "Marion M 21" pile driver which machine was unsafe and was responsible for plaintiff's injuries. Third, it is claimed that even though The Republic Steel Corporation did not, by its contract with The Western Foundation Company, reserve the right to specify the equipment and the power to order the removal of defective equipment, yet, when it became apparent to The Republic Steel Corporation that its contractor, The Western Foundation Company, was using

dangerous and unsafe equipment, it then became the duty of The Republic Steel Corporation to prevent its use.

The evidence in support of these contentions tends to establish that an employee (who was employed as a field inspector) of The Republic Steel Corporation, among other things supervised the angle at which the piles were driven into the ground, selected the piles to be driven, kept measurements of the length of the piles as they were driven into the ground, counted the number of hammer blows required to sink or drive the piles one foot when the piles were driven to their full length to test the resistance, and on occasion gave signals to plaintiff as operating engineer of the pile driver while the crew was in the process of putting another pile into the leads and on other occasions to increase or decrease the striking power of the hammer. The plaintiff's witnesses also testified that this inspector gave the hand signals to raise the pile into the leads and then lower the hammer at the time the pile driver overturned, and that he selected that particular pile to be driven at that particular place, which was a longer pile than had theretofore been used, requiring the hammer which weighed five tons to be elevated to the very top of the leads. The inspector denied this claim of the plaintiff.

The plaintiff further introduced evidence tending to establish that the "Marion M 21" pile driver was unsafe and would be likely to turn over if the hammer was raised to the top of the leads and that this fact was reported to defendant's engineer in charge. The plaintiff testified that on the occasion of the accident, the hammer had been raised to put the pile into the leads and then at the signal from defendant's inspector it was lowered over the pile and as said inspector signalled to stop the lowering of the hammer he put on the brakes causing a jar and the pile driver then tipped over.

Plaintiff's claim that The Republic Steel Corporation by its contract "specified the mode and manner of equipment to be used in the work and had the right to prevent or forbid the use of the defective crane" is not supported by the contract. Article 1, paragraph 1, supra, puts the entire responsibility of furnishing "* * * labor and equipment * * * to accomplish the work contracted for * * * in accordance with the drawings and specifications to be furnished by the agent * * *" upon The Western Foundation Company. This is the only place in the contract that deals with this subject. Plaintiff's contention that the defendant by this provision of the contract was required to furnish drawings and specifications as to the equipment to be used by The Western Foundation Company cannot be supported by Article 1, Section 1 of the contract.

The extent of the conduct of the defendant's field inspector whose conduct is depended upon by plaintiff to establish that The Republic Steel Corporation is liable as a tort feasor because it meddled, interfered and directly participated in the acts causing plaintiff's injuries, have been heretofore set forth. Plaintiff in its brief suggests that the pile that was being set for driving at the time of the accident was "oversize" and that directing its use constituted negligence. There is no evidence which would establish or even suggest this conclusion. The piling for the job was unloaded from cars by the plaintiff's employer. It was in varying lengths. The pile in question was 52 feet long, some four feet longer than any that had been used up to that point, but there is no evidence that its use was not necessary or required to accomplish the results desired in building the foundation for the blast furnace to be built on the site.

The conduct of defendant's inspector does not establish that The Republic Steel Corporation took charge of and directed the work of The Western Foundation Company. If it be established that he conducted himself as claimed by the plaintiff, his acts created no new danger. The owner of the property or his agent has the right to exercise control over its general contractor to the extent necessary to secure compliance with the contract as detailed by the plans and specifications. (Hughes v. C. & S. Railway Co., 39 Oh St 461; Kleer v. Erie Railway Co., 118 Oh St 612.) And if it be established that defendant's inspector signalled the plaintiff with respect to the operation of the pile driver, in placing a pile in the leads, such conduct could not be said to be supervisory in character and could not be said to establish an attempt to take charge of or direct the contractor's employees in carrying out their duties under the contract. Nor could such conduct be said to be a proximate cause of the falling of the pile driver. What was done was no more than what the contractor was required to do and accomplish and in the manner contemplated.

In the case of Steinman v. Pennsylvania Railroad Company 54 Fed. 2d, 1052, a foundation company was employed to build concrete piers for a railroad bridge, the contractor to furnish all labor, material and equipment. The railroad employed inspectors to see that the contractor carried out its obligations under the contract. At one point the inspector told an employee of the Foundation Company to provide scaffolding. The employee said there was not sufficient lumber of the proper size and grade to construct a safe scaffold. He did, however, follow the inspector's instructions to build the scaffold and with what lumber was at hand. Another em-

ployee was injured when the scaffold broke. Paragraphs 3 and 4 of the headnotes provide:

"3. That independent contractor's servant was sent by contractee's inspector to do certain work, did not make him contractee's servant pro hac vice.

4. Whether there is such assumption and change of masters as to create corresponding change of liability depends on whose work is being performed, usually answered by ascertaining who controls servants."

"In this connection there must be a careful distinguishing between authoritative direction and control and mere suggestion as to details or necessary cooperation where work furnished is part of a larger undertaking."

All of the cases upon which the plaintiff relies to establish the liability of the defendant because of the claim that the defendant meddled, interfered and directly participated in the acts causing plaintiff's injury are clearly distinguishable.

The case of Pender v. Raggs, 126 Penna. 337, an independent contractor in constructing a foundation for a stack, advised the owner after the ground was excavated that a wall which was already on the premises next to the excavation would be dangerous and should be removed. The employer insisted that the work proceed without a removal of the wall. The wall fell and the court held that it was a jury question as to whether or not the owner was negligent.

Here the danger was the result of the owner's conduct with respect to a matter entirely outside of the contract with the plaintiff's employer and had to do with the duty of the employer of an independent contractor to furnish a safe place in which to work insofar as that can be done when taking into consideration the character of the work to be accomplished by the contract.

The ground of liability in McGrath v. Penn. Sugar Co. 127 Atl. 780 was because the owner directly instructed the employe of the subcontractor to do the work in such a manner as to create the dangerous condition which caused the injury.

In the case of Ellinghouse v. Ajax Live Stock Co. 152 Pac. Rep. 481 the plaintiff's employer contracted with defendant as an independent contractor to saw certain logs. A foreman of defendant, not being satisfied with the way one of the independent contractor's employees was doing the work, took charge of the saw himself and while actually taking the place of one of the sub-contractor employees and doing such employee's work, negligently injured the plaintiff.

Paragraph 12 of the headnote provides:

"Where an employee is injured by the negligence of a co-worker who is a servant of a stranger to the employment, the master of such co-worker is liable for the injury if the negligent act was within the general scope of the co-worker's duty to his master."

Inasmuch as the only acts claimed by plaintiff on the part of defendant's field inspector had to do either with seeing to it that its contractor carried out the terms of the contract in doing the work therein called for, or in lending occasional assistance in the performance of menial tasks about the contractor's work, such conduct could not in any sense be considered as directory in character. The plaintiff's claim that the defendant meddled or interfered with work whereby it could be charged with the negligent use of defective equipment by the contractor is not supported.

The final claim of plaintiff; that even though the contract between The Western Foundation Company and The Republic Steel Corporation did not reserve the right to specify the equipment to be used by the Western Foundation Company, yet if during the progress of the work The Republic Steel Corporation learned that the equipment which the Western Foundation Company was using was unsafe to use it was the duty of the Republic Steel Corporation to prevent the danger.

The evidence is undisputed that The Western Foundation Company an independent contractor, brought the pile driver in question upon the premises of The Republic Steel Corporation for the purpose of carrying out the work it had contracted to do. It was equipment belonging to the Western Foundation Company over which the defendant had no control. The plaintiff whom The Western Foundation Company employed to operate it was a man of many years experience as the operator of a pile driver, having worked for many nationally known contractors from coast to coast and who had operated this particular pile driver for about five weeks before the accident. Nowhere in his testimony does he even suggest that the pile driver was unsafe.

The plaintiff's evidence was to the effect that an assistant superintendent in charge of pile driving for The Hunkin-Conkey Construction Company, another contractor working on this job, reported to a plant engineer of The Republic Steel Corporation that this pile driver was, in his opinion, unsafe under the circumstances under which it was being used. It is con-

tended therefore that The Republic Steel Corporation was negligent in permitting The Western Foundation Company, an independent contractor, under contract with the Defense Plant Corporation, for whom The Republic Steel Corporation acted as agent, to continue to use pile driver and its negligent failure to prevent the use of such unsafe pile driver was a proximate cause of plaintiff's injuries. '

The plaintiff, in support of his contention that there was a legal duty on the defendant to intervene under such circumstances, relies on the case of Keehn v. P. J. Carlin Construction Co. Inc. 278 N. Y. Supp. 635. The facts in that case are clearly distinguishable from the case here under consideration. There, the defendant construction company employed the owner of a boat as an independent contractor to transport its (The construction company's) employees to an island to their place of employment. It was brought to the attention of defendant that the boilers of the boat were unsafe. The defendant failed to act on such notice—the boilers exploded and plaintiff's decedent was drowned. The defendant could not avoid the duty of exercising ordinary care as to the safety of its employees in carrying out its duty to transport them to their place of employment and such duty could not be avoided by entering into an agreement with an independent contractor to carry out that part of the employer's obligation to his employees when it had knowledge that such independent contractor was carrying out the agreement in a negligent fashion.

The plaintiff also relies on the case of Rosenberg v. Schwartz 260 N. Y. 162. The facts in this case give no assistance to plaintiff. Defendant, a general contractor, employed a subcontractor to do the brick on a building he had contracted to construct. The New York Building Code provided the outside scaffold should be enclosed upon the outer edge. The subcontractor failed to enclose the scaffold as required by law, a piece of brick fell from the scaffold and hit plaintiff who was at play in the yard next to where the building was being constructed. Here the duty of the principal contractor to protect the public in the manner provided by law from the dangers created by the construction of the building, was the primary question, it being a reasonable deduction from the evidence that he was fully informed as to the failure of his sub-contractor to comply with the law. Neither of these cases has to do with the circumstances of claimed defective and unsafe subcontractor's equipment by an employee of such sub-contractor.

The Supreme Court of Ohio clearly set forth the extent of a principal contractor's liability with regard to the negligent conduct of an independent contractor, resulting in in-

jury to the sub-contractor's agent, in the case of **Bossnak v. Steel Co. 145 Oh St 538.** At page 542 of the opinion the court said:

"The owner has the further duty of exercising reasonable care to inform the invitee of hazardous conditions of the premises and of activities thereon unknown by and not obvious to the invitee. Such duty, however, has reference only to the owner's plant and premises and not to the contractor's equipment. 2 Shearman & Redfield on Negligence (Rev. Ed) 688, Sec. 279; 38 Amer. Juris. 754;—Sec. 96; Prosser on Torts 635; 29 O. Jur. 465, Sec. 61."

"Numerous cases are cited by these authorities, supporting the general proposition 'above stated.
2 Sherman & Redfield on Negligence (Rev. Ed) 688, Sec. 279 stated the rule thus:

'An occupant of land owes to the servants of an independent contractor, employed to do work thereon, the duty of exercising ordinary care to render the premises reasonably safe for the performance of the work. But the common law duty to furnish a safe place to work, even as extended by statute to include the tools and appliances without which the place to work would be incomplete for the purpose intended, refers to the owner's plant and not to the contractor's equipment. * * * The law requiring an owner to keep the place reasonably safe for a contractor and his subcontractors, does not apply where the work itself is of an unsafe nature, or the defects are due to the imperfect and negligent work of the contractor himself.'

"**Hozian, an infant, v. Crucible Steel Casting Co. 132 Oh St 453,** 9 N. E. (2d) 143, 112 A. L. R. 333, and cases cited are also in point. See, also, **Davis v. Chas. Shutrump & Sons Co 140 Oh St 89,** 42 N. E. (2d) 663."

In the Restatement of the law of Torts, Vol. 2 (Negligence) Page 1146, parag. 426, the rule is stated as follows:

"Except as stated in parag. 427 to 429, an employer of an independent contractor is not liable for bodily harm caused by any negligence of the contractor which does not effect the result which the employer is under a duty to have attained but consists solely in the improper manner in which the contractor does the detail of the work necessary to attain such result."

The subjects considered in parags. 427, 428 and 429 do not in any way involve the facts in this case.

Also, in the Restatement of the Law of Torts, supra, at page 1102, parag. 410, in considering the subject of Contractor's conduct in obedience to employer's directions, we find at page 1103:

"He is not subject to liability for any harm caused by some improper method which the contractor without any direction of his employer adopts in doing the work."

It must be concluded, therefore, that the plaintiff's third contention cannot be maintained.

The court during its charge to the jury left the legal interpretation of the meaning of the contract between Western Foundation Company and The Defense Plant Corporation for the jury to determine. There was no controversy as to the provisions of the contract. The court was in error, therefore, in not directly stating to the jury the obligations imposed upon the parties by such agreement.

For the foregoing reasons the judgment should be reversed and final judgment rendered for the defendant appellant.