Hazel PARSONS, Administratrix of the Estate of John E. Parsons, Deceased, Plaintiff-Appellant,

v.

BLOUNT BROTHERS CONSTRUCTION COMPANY, Defendant-Appellee.

No. 14018.

United States Court of Appeals Sixth Circuit.

Aug. 2, 1960.

C. Richard Grieser, Columbus, Ohio, Dombey, Tyler, Richards & Grieser, by: Alex S. Dombey and C. Richard Grieser, Columbus, Ohio, and Jack McCann, Waverly, Ohio, on the brief, for appellant.

Arthur W. Wiles, Columbus, Ohio, Wiles, Doucher, Tressler & Koons, by: Arthur W. Wiles, Columbus, Ohio, on brief, for appellee.

Before MARTIN and WEICK, Circuit Judges, and HOLLAND, Senior District Judge.

WEICK, Circuit Judge.

Plaintiff below is the widow of John E. Parsons and administratrix of his estate. She brought this action in the District Court against Blount Brothers Construction Company and Walter Truland Corporation to recover damages for the alleged wrongful death of her husband. Jurisdiction was based on diversity of citizenship. Ohio substantive law controlled the issues. The case was tried to a jury. At the close of plaintiff's case, the District Court granted the motions of both defendants for a directed verdict in their favor, without giving any reasons for his action. Plaintiff has appealed from the judgment in favor of Blount.

The judgment in favor of Truland has become final.

Plaintiff's claim against Blount was that her decedent was electrocuted and killed by reason of Blount's negligence while decedent was working on a construction job.

John Parsons was, at the time of his death, in the employ of the James F. O'Neill Company. He was a pipe-fitter by trade. O'Neill was the subcontractor for pipe work for the construction of a feeder building and facilities as a part of the Goodyear Atomic Energy Plant in Pike County, Ohio. Blount Brothers was the general contractor and Truland was the electrical subcontractor.

The area of construction was surrounded by a fence and the subcontractors and general contractor worked in and about the entire construction area. Three uninsulated wires energized with 13,800 volts of electricity, extended from outside the construction area to a pole just inside the fence in the construction area and then extended across the work area to another pole and to a transformer station in the area.

In the performance of his duties decedent often worked with a hydro-crane, but not as the operator. A hydro-crane is a type of crane mounted on the bed of a truck. It has a telescoping boom, which can be extended or withdrawn, depending on the nature of the work to be done. This particular hydro-crane had a maximum height of 32 feet when the boom was fully extended. The hydro-crane had been operated extensively over the entire construction area prior to the day of the fatal accident.

On the day of the fatal accident decedent was engaged in shifting pipe from one pile to another. The pipe was stockpiled under the high-tension wires previously mentioned. This area was most convenient to the "fab" shop where the pipe was prepared for installation in the main building. Decedent was on the ground, moving about and standing on piles of pipe. Hobart Johnson was operating the hydro-crane, the boom of which was fully extended. Decedent

would hook a length of pipe to the crane cable and Johnson would then swing the pipe from one pile to another. The accident occurred in the course of moving pipe, when the boom of the crane in the extended position touched the overhead high-tension wires while the decedent was guiding a piece of pipe attached to the crane with his left hand and signalling to Johnson with his right hand.

Plaintiff's theory of liability is that Blount, through its safety engineer William McClurg, was charged with the duty of correcting any safety hazards in the construction area; that Blount knew or should have known of the danger inherent in the maintenance of the overhead uninsulated high-tension wires in close proximity to where men were required to work with a hydro-crane and should, in the exercise of ordinary care, have taken steps to correct the dangerous condition, but failed and neglected to do so. Plaintiff claims that Blount had a duty under the provisions of the Revised Code of Ohio § 4101.01 et seq. to provide decedent with a reasonably safe place in which to work and breached that duty.

The principal contention of defendant in this Court is that under the doctrine of Schwarz v. General Electric Co., 1955, 163 Ohio St. 354, 126 N.E.2d 906, it cannot be held responsible for this accident. See also: Ford Motor Co. v. Tomlinson, 6 Cir., 1956, 229 F.2d 873 and Wellman v. East Ohio Gas Co., 1953, 160 Ohio St. 103, 113 N.E.2d 629.

Plaintiff contends that those cases are not applicable to the instant factual situation and that Bosjnak v. Superior Sheet Steel Co., 1945, 145 Ohio St. 538, 62 N.E.2d 305, controls.

The third syllabus of Schwarz reads:

"Where the owner of premises employs an independent contractor to do work thereon, *is not in control of the work area, does not participate in the work,* and gives notice to the contractor or to those in charge of the work of the potential danger of contact with a high-tension electric line maintained on the premises, such owner is not legally obligated to give notice of such danger to the individual employees of such independent contractor who may be assigned by such contractor to unload steel beams at a site underneath such high-tension line" (Emphasis added.) [163 Ohio St. 354, 126 N.E. 2d 907.]

Syllabus one of Bosjnak reads:

"An employee of an independent contractor, while engaged in the erection of a building upon premises, *the possession and control of which are retained by the owner,* is an invitee to whom the owner owes the duty of exercising ordinary care to maintain the premises in a reasonably safe condition for use in a manner consistent with the invitation, and to inform the invitee of hazardous conditions of the premises and of activities thereon unknown by and not obvious to the invitee" (Emphasis added.)

The controlling distinction between Schwarz and Bosjnak was stated by the Ohio Supreme Court, in the Schwarz opinion, to be:

"The Bosjnak case is distinguishable from the instant case in that in that case the defendant actually participated in the operations incident to and in connection with the erection of its building upon which the plaintiff was working for the independent contractor." 163 Ohio St. 354, 359, 126 N.E.2d 906, 909.

Thus, the determinative issue is whether defendant had custody and control of the premises.

There is no question that custody of the job site was in defendant. Blount was the principal contractor and was also actively engaged in work thereon. However, defendant denies that it had control over the subcontractors. In support of that contention defendant sought to prove that it had no right to direct or interfere with the manner or mode in which any of the subcontractors were performing their respective delegated tasks. In our opinion, that evidence was not conclusive with respect to the issues

of the case. Plaintiff had only sought to show that defendant controlled safety features and abatement of hazards. If this were true it would be immaterial that defendant did not have control over other aspects, as to the method of carrying out the work, exclusive of safety.

The evidence disclosed that William McClurg was employed by Blount on the Goodyear job as "first aid man and safety engineer." He testified:

"As a safety engineer, I worked jointly with AEC under their supervision, more or less, and my duties were to go around through all the area that was under construction and anything that I seen that was hazardous to the working conditions of the men or any way, I was supposed to see that it was corrected or try to get it corrected as soon as possible."

If his directions to the employees of a subcontractor were not obeyed:

"The only thing I could do if I seen anything the men were doing hazardous, if I mentioned it to them and if they didn't want to go along with me on it, the only thing I could do would be to go to their superior. Then if I didn't get anything done I would have to go to my boss, Mr. Cross of The Blount Brothers Construction."

McClurg testified to an instance where he had ordered Johnson to stop operating his crane in a manner which McClurg considered hazardous.

"They had this hydro-crane on the inside of the main feeder building and they were attempting to put links of pipe through an air vent to the second floor near a 440 line. Well, 440 lines run in front of— down from the air vent and also came around to the side, and they had this hydro-crane in there attempting to put pipe through this air vent to the second floor, and I made them withdraw the hydro-crane from the building and stop that operation."

■ In view of all this evidence, in our judgment, it was for the jury to say whether Blount, having custody of the job site, also had control thereof. Robinson v. Republic Steel Corporation, Ohio App.1948, 78 N.E.2d 381.

■ If Blount had custody and control over the premises where the work was being performed, the so-called Ohio "frequenter" statutes applied. O. R. C. § 4101.01 et seq. Comerford v. Jones & Laughlin Steel Corp., 1960, 170 Ohio St. 117, 162 N.E.2d 861; See: American Steel & Wire Co. v. Sieraski, 6 Cir., 1941, 119 F.2d 709; United States Steel Co. v. Olewinski, 6 Cir., 1956, 235 F.2d 326. Under these statutes, Blount owed decedent a duty to provide him with a place of employment which was as safe and free from danger as the nature of the employment would reasonably permit. American Steel & Wire Co. v. Sieraski, supra.

The existence of hazards which could be eliminated by the exercise of ordinary care by those in custody and control of the premises cannot be considered as inherent hazards necessarily present because of the character of the work to be done.

■ Was the evidence sufficient to require submission of the issue of Blount's negligence to the jury?

Blount knew that the hydro-crane was required to and did operate extensively in the construction area and under the uninsulated high-tension wires carrying 13,800 volts of electricity. Yet Blount's safety man McClurg admitted on cross-examination that prior to the accident he had not determined the height of the high-tension wires above the ground or the height of the boom.

McClurg further admitted that there was quite a distance between the poles on which the high-tension wires had been attached and "due to atmospheric conditions that there will come an awful swag in these lines. When it is cold the lines will tighten up; when it is warm they will loosen. There will be a swag in it due to the warmth in the air." It was

fairly warm on the day the accident occurred. McClurg never told Johnson or decedent to watch out for these particular lines. There is no evidence that he warned them of the effect of atmospheric conditions on the wires.

Whether Blount was negligent in failing to furnish decedent a reasonably safe place in which to work was for the jury to determine. It was for them to decide whether the conditions heretofore discussed constituted a hazard which Blount, in the exercise of ordinary care, could have eliminated.

The next question is whether decedent was guilty of contributory negligence as a matter of law. Under Ohio law, there is a presumption that decedent at the time of the accident was exercising due care for his own safety and was not negligent. Biery v. Pennsylvania R. R. Co., 1951, 156 Ohio St. 75, 99 N.E.2d 895. As before stated, the crane had operated extensively in the construction area prior to the accident without injury. There is no evidence that decedent had knowledge of the propensity of the wires to swag in warm weather. There was no proof that he had been advised on this subject by Blount's safety man McClurg, who knew all about it.

In considering this question we must take into account that at the time of the accident decedent was busily engaged in guiding the pipe while it was being moved by the crane. Whether he reasonably could have been expected to carry on his work and also keep an eye on the boom and judge its height and distance from the wires was a question of fact for the jury to decide.

There was no evidence that decedent knew the exact height of the wires or the boom. Johnson, the crane operator, testified that the wires were light shiny wires and it was difficult to judge their distance with the sun shining on them. There is evidence that decedent and Johnson had talked about the height of the wires and had estimated them to be about 40 feet above the ground. It will be remembered that McClurg, the safety engineer, did not know the height of either the wires or the boom before the accident. As an estimate, 40 feet was not very far off since the evidence disclosed that the poles were 35 feet high and that the wires were attached from 6" to one foot from the top of the poles. The boom was 32 feet high and there would have been clearance if the height had been as estimated, or even with the actual height of the wires if they had not sagged.

There was a sign near the transformer station reading: "High Voltage—Keep out." There were no warning signs near the piles of pipe where decedent was working. There were numerous other wires in and about the construction area. The proof did not disclose whether decedent knew that the wires in question were high-tension wires.

In any event, in our judgment, reasonable minds might reach different conclusions on the issue of contributory negligence and it was for the jury to determine.

One further issue, relating to the admissibility of evidence, is presented. Plaintiff sought to introduce evidence that subsequent to the accident the boom of the crane was locked and welded in a shortened position and that such action was taken on the order of McClurg and the safety man of AEC. The District Court excluded the evidence.

As a general proposition, in an injury action, evidence of subsequent repairs is inadmissible, as it is said that such evidence is not probative of the issue of negligence. Rohr v. Scioto Valley Traction Co., 1920, 12 Ohio App. 275; 21 O.Jur.2d., Evidence, § 205. An exception to that general rule is that where control of the instrumentality is in issue subsequent repairs may be shown to prove control in the defendant. II Wigmore § 283. That exception is recognized in the Ohio law. East Ohio Gas v. Van Orman, 1931, 41 Ohio App. 56, 179 N.E. 147; Village of Lebanon v. Schwartz,

1915, 4 Ohio App. 173; 21 O.Jur.2d, Evidence § 206.

In argument to the District Court, counsel for plaintiff stated that the evidence was being offered for the limited purpose of proving that defendant had the authority to control the safe operation of the hydro-crane.

The issue of control being a key one, and vigorously contested in this case, this evidence was probative of the question and should have been admitted.

The judgment of the District Court is reversed and the cause remanded for a new trial.