UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff,

v.

JAMES F. O'NEIL COMPANY, Inc., Defendant.

Civ. A. No. 13144.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 9, 1966.

Huddleston, Hurley, Senter & Davis, Albert J. Huddleston, Katherine S. Wright, New Orleans, La., for plaintiff.

Loeb & Livaudais, Stanley E. Loeb, George M. Leppert, New Orleans, La., for defendant.

AINSWORTH, District Judge:

This is an action by United States Fidelity & Guaranty Company, assignee and subrogee to the rights of Blount Brothers Construction Company, its assured, for indemnity from James F. O'Neil Company, Inc., in the sum of $35,886.82, representing legal fees and expenses incurred by assignee in defending a suit brought against Blount Brothers Construction Company by the widow of an employee of O'Neil, and the cost of a compromise settlement with the widow.

On March 6, 1956, James F. O'Neil Company, Inc. was awarded a subcontract by Blount Brothers Construction Company, the general contractor of the United States Atomic Energy Commission, for the construction of a Feed Plant Facility, Portsmouth Area Project. O'Neil was to perform certain mechanical work in connection with the construction of the Facility. The subcontract contained the following indemnity clause:

"Article IX—(a). Sub-contractor shall indemnify Contractor against all claims for damages arising from accidents to persons or property occasioned by the Sub-contractor, his agents or employees; and Sub-contractor shall defend all suits brought against the Contractor on account of any such accidents and shall reimburse Contractor for any expense, including reasonable attorney's fee sustained by Contractor by reason of such accidents."

During the course of the work an accident occurred causing the death by electrocution of John E. Parsons, a pipe fitter, employed by O'Neil. A diversity suit was brought by the widow of Parsons, the administratrix of his estate, against Blount Brothers Construction Company (and another defendant not involved in this suit) for indemnity in the United States District Court, Southern District of Ohio, Eastern Division, to recover damages for the alleged wrongful death of her husband, in which Ohio substantive law controlled. United States Fidelity & Guaranty, liability insurer of Blount, requested that O'Neil defend the suit, which O'Neil declined, as a consequence of which United States Fidelity & Guaranty employed its own counsel. A jury trial was held and at the close of plaintiff's evidence, the court directed a verdict in favor of both defendants. On appeal, the Sixth Circuit reversed and remanded, holding that the matter presented a jury issue as to the possible negligence of Blount and the contributory negligence of decedent. Parsons v. Blount Brothers Construction Company, 6 Cir., 1960, 281 F.2d 414. Subsequently, and after informing O'Neil of its intention to do so, United States Fidelity & Guaranty, on behalf of Blount, negotiated a compromise settlement with the widow of Parsons. The question of negligence was, therefore, not decided.

The following pertinent facts concerning the accidental death of Parsons have been stipulated by the parties in the pretrial order:

That on March 6, 1956, James F. O'Neil Company, Inc. entered into a subcontract with Blount Brothers Construction Company, the general contractor, with the United States Atomic Energy Commission for construction of Feed Plant Facility, Portsmouth Area Project. On March 11, 1957, John E. Parsons, an employee of O'Neil, was electrocuted as the result of holding a length of

pipe which was being lifted by a crane which struck an exposed overhead electric wire. Parsons was acting in the course of his employment in assisting in removing pipe, pursuant to the contract between O'Neil and Blount. The hydraulic crane and the lift were operated by Hobert Johnson, Jr., also an employee of O'Neil. The electric current which killed Parsons was conducted through the crane or lift and through the pipe which was being held by Parsons. O'Neil refused to defend the ensuing lawsuit and was notified of the proposed compromise settlement prior to the consummation thereof. United States Fidelity & Guaranty Company, liability insurer of Blount, defended the suit by the administratrix and expended $8,386.82 in attorney's fees and other expenses. Also, as a result of the compromise settlement with the administratrix, United States Fidelity & Guaranty Company paid on behalf of Blount $27,500, a total of $35,886.82.

The parties have also agreed that the indemnity provisions of the subcontract should be interpreted in accordance with the law of Ohio, and that the legal issue is whether the terms of the indemnity agreement render defendant liable in indemnity to plaintiff as the subrogee of Blount Brothers Construction Company.

In addition to these stipulations, the parties have offered in evidence the transcript of testimony and the exhibits of the trial in the federal court in Ohio.

■ Under Ohio law contracts of indemnity purporting to relieve one from the results of his own negligence are not contrary to public policy if the indemnity provisions express that intent in clear and unequivocal terms. George H. Dingledy Lumber Co. v. Erie R. Co., 102 Ohio St. 236, 131 N.E. 723 (1921); St. Paul Mercury Indemnity Co. v. Kopp, Ohio App., 1954, 121 N.E.2d 23. The word "negligence" is not sacrosanct if the language expressed in the agreement shows a clear intention to hold the negligent indemnitee harmless. General Acc. F. & L. Assur. Corp., Ltd. v. Smith &

Oby Co., 6 Cir., 1959, 272 F.2d 581, 77 A.L.R.2d 1134; George H. Dingledy Lumber Co. v. Erie R. Co., supra.

■ We are convinced that the parties to the present agreement, in clear and unequivocal language, expressed the intention that Blount should be held harmless and indemnified against all claims for damages arising from accidents suffered by O'Neil's employees occasioned or caused by O'Neil or its employees, regardless of whether Blount was negligent.

In New Amsterdam Cas. Co. v. Kilroy Structural Steel Co., Ohio App., 1959, 159 N.E.2d 797, the court held that the following contract of indemnity imposed liability on the indemnitor:

"The subcontractor shall indemnify and save harmless, the owner, the architect, the contractor, and their respective agents, from any and all liability, payments and expenses of any nature, for injury or death to any person, or persons, or for damage to any property, caused or alleged to have been caused by the subcontractor, *or incidental to the execution of work under this contract by the subcontractor, his agents or employees.*" (Emphasis added.)

In St. Paul Mercury Indemnity Co. v. Kopp, Ohio App., 1954, 121 N.E.2d 23, the following similar indemnity agreement was construed to impose liability on the indemnitor:

"Contractor agrees, in consideration of the work awarded to it by Principal, to indemnify and save harmless Principal from any and all loss, cost, damage, or expense to persons or property, including injury or death suffered by persons employed by said Contractor or members of the public, *growing out of or in any way connected with the performance of the work awarded to Contractor.*" (Emphasis added.)

The indemnity provisions in the cited cases are almost identical to those in the instant case, insofar as they show a clear intention by the contracting parties to indemnify the contractor for liability in-

curred as a result of accidents occasioned by the subcontractor. We are, therefore, convinced that the provisions of the contract between Blount and O'Neil, taken in conjunction with Ohio law, require indemnity by O'Neil in the sum of $35,886.82, and we so hold.

It is not incumbent upon us to determine the issue of negligence as we construe the indemnity provisions of the contract. However, we have read the transcript and studied the exhibits and conclude that there was no negligence or derogation of duty on the part of Blount which caused the fatal accident. Admittedly, Blount strung the high-tension wires beneath which the pipe of O'Neil was stored at the time of the accident. However, warnings of the hazards of possible contact with the wires were prominently placed in the work area. A sign carrying the words "High Voltage—Keep Out" was placed near the transformer station. Signs indicating that the overhead wires were high-voltage wires were all over the construction area.

In the appellate review of this case, United States Circuit Judge Weick, writing for the Sixth Circuit, defined the standard of care required of Blount according to the law of Ohio. Under the controlling statutes, if Blount had custody and control over the premises where the work was being performed, the court said:

"  *  *  *  Blount owed decedent a duty to provide him with a place of employment which was as safe and free from danger as the nature of the employment would reasonably permit. American Steel & Wire Co. v. Sieraski, [6 Cir., 119 F.2d 709,] supra.

"The existence of hazards which could be eliminated by the exercise of ordinary care by those in custody and control of the premises cannot be considered as inherent hazards necessarily present because of the character of the work to be done."

The court concluded in its opinion that "the determinative issue is whether defendant [Blount] had custody and control of the premises. There is no question that custody of the job site was in defendant. Blount was the principal contractor and was also actively engaged in work thereon. However, defendant denies that it had control over the subcontractors."

We are of the opinion that the necessary element of control by Blount was lacking. Blount's employee, McClurg, who was employed as "first aid man and safety engineer," stated that he had no right or control of any kind to tell anyone how to do his work. Nor can we find that Blount was remiss in not providing decedent "with a place of employment which was safe and free from danger as the nature of the employment would reasonably permit." Both Johnson, the crane operator, and Parsons, the deceased, were employed by O'Neil and were working with O'Neil's equipment; they were aware of the high-voltage wires and the hazards involved in working the crane in close proximity to the wires; they knew the length of the crane's boom when fully extended; they had often discussed the height of the wires in the construction area. They worked with various lengths of pipe. Johnson admitted that both he and the decedent could see the wires by looking up, and that if they had done so prior to picking up the pipe which contacted the wires they would have seen the wires. The high-tension wires had been strung prior to O'Neil's employment in the area. The crane had been operated extensively in the working area prior to the accident. Johnson was an experienced hydrocrane operator. Decedent, although not a hydrocrane operator, had often worked with such equipment.

We conclude that the sole proximate cause of the accident was the negligence of the crane operator and decedent in failing to exercise ordinary care in the performance of their duties; therefore, that there was no fault in Blount under the circumstances.

Judgment will be entered in plaintiff's favor against defendant in the sum of $35,886.82.