**Snow v. Freed**
*[Cite as 3 AOA 11]*

*Case No. C-890064*
*Hamilton County (1st)*
*Decided May 16, 1990*

Rendigs, Fry, Kiely & Dennis, J. Kenneth Meagher, Esq., and Wilson G. Weisenfelder, Jr., Esq., 900 Central Trust Tower, 5 West Fourth Street, Cincinnati, Ohio 45202, for Plaintiffs-Appellants.

Sirkin, Pinales, Mezibov & Schwartz, Marc D. Mezibov, Esq., and Edmund J. Mckenna, Esq., 920 Fourth and Race Tower, 105 West Fourth Street, Cincinnati, Ohio 45202, for Defendants-Appellees.

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignments of error, the briefs and the arguments of counsel.

Plaintiffs-appellants Steven Snow and his mother and guardian, Bernice Mitchell, appeal from the summary judgment entered in favor of Joseph Freed and The Capitol Companies, Inc. ("Capitol"), and the certified pursuant to Civ. R. 54(B). In their sole assignment of error, the appellants raise issues concerning the duty of care owed by one having custody and control of real property to an employee of an independent contractor hired to perform inherently dangerous tasks on the premises. We find none of their contentions to be well taken.

Snow and Mitchell brought suit against Freed and Capitol, among others, alleging that Snow was injured when the aluminum extension pole he was using to paint a wall of a building located in a Norwood, Ohio, shopping center came into contact with uninsulated electrical lines owned and maintained by defendant Cincinnati Gas & Electric Company ("CG&E"). At the time of his injury, Snow was an employee of defendants Donald Parks, Jr., and Anthony Payson, who did business as Consistent Painting ("Consistent") and who had been hired by Freed as independent contractors to perform roofing repairs and painting services on the building. Freed owned the premises being painted by Snow, a building leased by Marshall's Department Store, and Capitol was responsible for the management of the shopping center.

Our review of the record before the trial court, including the deposition of Anthony Payson and the affidavit of Snow's co-worker, John Englert, indicates that the parties dispute whether Snow was instructed how to safely perform the painting job and whether Snow appreciated the danger present in the working conditions. The parties do not dispute, however, that Snow's immediate employer, Anthony Payson, was aware of the danger, T.d. 41 at 39, 86, and that Freed and Capitol did not actually participate in the job operation beyond the initial hiring of Consistent. Indeed, it is Freed and Capitol's failure to warn Consistent's employees, or their failure to contact CG&E and request that the power line be deenergized, of which Snow and Mitchell complain.

The trial court determined that the proximity of the power lines to the Wall being painted constituted an inherent and necessary hazard of the painting job. The court found that Freed and Capitol were entitled to summary judgment because the duty of a property owner to furnish a safe workplace to employees and frequenters under R.C. 4101.11 [1] does not extend to hazards that are "inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor." T.d. 57, quoting *Eicher v. United States Steel* (1987), 32 Ohio St. 3d 248, 512 N.E.2d 1165. In their sole assignment of error, Snow and Mitchell assert that the trial court erred in granting summary judgment in favor of Freed and Capitol. We do not agree.

In support of their assignment of error, Snow and Mitchell argue that there exist genuine issues if material fact with regard to whether the work performed by Snow was inherently dangerous under all the circumstances. Snow and Mitchell claim that summary judgment was improper because an activity will not be considered "inherently hazardous" where the hazards could be eliminated by the exercise of ordinary care by those in custody and control[2] of the premises, *Parsons v. Blount Brothers Construction Co.* (C.A. 6, 1960), 281 F.2d 414, 417, and because in this case, the hazard could have been eliminated by requesting CG&E to deenergize the lines or to attach the lines to the poles in an alternate configuration that would have provided additional clearance from the edge of the wall. We do not believe that application of the inherent-danger exception to R.C. 4101.11, as a matter of law, is improper under such circumstances, however.

The inherent-danger exception to R.C. 4101.11 was recognized by the Supreme Court of Ohio in *Wellman v. East Ohio Gas Co.* (1953), 160 Ohio St. 103, 113 N.E.2d 629. An alternative formulation of the rule, as stated in *Wellman,* is that "[o]ne who engages an indepen-

dent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance." *Id.* at paragraph two of the syllabus.

The court in *Wellman* did not question whether the owner of the premises himself could have taken any measures to lessen or remove the danger to an employee of the independent contractor, but instead asked whether the owner had superior knowledge or whether, by undertaking an endeavor that by its very nature provided notice of the danger, the independent contractor was under a superseding duty to warn and protect its employees. *Id.* at 107-108, 113 N.E. 2d at 632. The possibility that the owner of a premises may take action which reduces the danger present in a task is of no moment when, as in the case before us, an independent contractor is hired who also appreciates the danger and has within his control the means to render the performance of the task safe, or who must ultimately take responsibility for the risks attendant to the task. In this case, Consistent could have contacted CG&E and requested the lines to be deenergized. Consistent also could have taken alternative means to render performances of the job safe, such as erecting a scaffold at a height that would have permitted the workers to reach the top of the wall but no higher. See T.d. 41, Deposition of Anthony Parks, at 69. Unless the owner of the premises voluntarily interferes with the independent contractor's performance of the job by actually participating in the job operation, see *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St. 3d 206, 452 N.E.2d 326, we do not find there to be a duty of the owner of a premises to supervise an independent contractor hired to perform a task, the dangers of which both parties appreciate. See, also, *Schwarz v. General Electric Realty Corp.* (1955), 163 Ohio St. 354, 126 N.E.2d 906; *Bates v. Cleveland Elec. Illuminating Co.* (1961), 85 Ohio Law Abs. 345, 171 N.E.2d 548; *Brauning v. Cincinnati Gas & Elec. Co.* (Jan. 19, 1989), Hamilton App. No. C-880029, unreported. The assignment of error is therefore overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN P.J., UTZ and GORMAN, JJ.

---

[1] R.C. 4101.11 provides:
"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

[2] As the court's opinion in *Parsons* indicates, the question of whether a danger is an "inherent" hazard depends in large part upon whether the owner of the premises has retained control of the premises, and whether the owner or the contractor is responsible for the elimination of or protection against the danger. In this sense, the question becomes one of whether the owner has "actively participated" in the activity. See *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 60 Ohio St. 3d 206, 452, N.E.2d 326; *Miller v. Procter & Gamble Mfg. Co.* (Dec. 20, 1989), Allen App. No. 1-88-36, unreported.