FROST, Appellant,

v.

DAYTON POWER AND LIGHT COMPANY, Appellee, et al.

[Cite as *Frost v. Dayton Power & Light Co.* (2000), 138 Ohio App.3d 182.]

Court of Appeals of Ohio,
Fourth District, Adams County.

No. 98CA669.

Decided June 23, 2000.

*John F. Berry,* for appellant.

*Scott R. Thomas* and *Norman J. Frankowski,* for appellee.

PETER B. ABELE, Judge.

This is an appeal from an Adams County Common Pleas Court judgment granting a directed verdict in favor of Dayton Power and Light Company ("DP&L"), defendant below and appellee herein.

Loren Dean Frost, plaintiff below and appellant herein, raises the following assignment of error for review:

"The lower court erred when it granted the Dayton Power and Light Company's motion for a directed verdict on liability at the close of the plaintiff's case."

Our review of the record reveals the following facts pertinent to the instant appeal. DP&L engaged Enerfab, Inc. ("Enerfab"), an independent contractor, to update an ignitor system located at one of its power plants. When Enerfab had completed installing the new system, Kessinger Services Industries ("KSI"), another independent contractor that DP&L employed, began to paint the newly installed system.

On December 8, 1993, appellant, an employee of KSI, was painting the newly installed pipes. The pipes were located approximately twelve inches above the floor. As appellant was painting, a one-to two-inch pipe allegedly fell from above and struck appellant.

On December 5, 1995, appellant filed a complaint against DP&L and Enerfab. Appellant alleged that Enerfab negligently performed the work DP&L hired it to do. Appellant claimed that Enerfab "left old piping hanging in a hazardous manner." Appellant further alleged that DP&L failed to provide appellant with a

safe place to work. Appellant averred that DP&L failed to warn appellant of hazardous piping left in the area where appellant was working.

On February 7, 1996, DP&L filed an answer denying liability and specifically denying that it had knowledge of any hidden dangers associated with appellant's work. On February 16, 1996, Enerfab filed an answer denying liability.

On December 4, 1996, DP&L filed a motion for summary judgment. In its motion, DP&L claimed that no genuine issue of material fact remained as to whether it owed appellant a duty. DP&L noted that R.C. 4101.11 and 4101.12 generally require employers to provide an independent contractor with a safe place to work. DP&L argued, however, that pursuant to the "inherent danger" exception, it owed appellant no duty, unless appellant demonstrated that DP&L "actively participated" in KSI's work. DP&L asserted that appellant was fully aware that industrial painting involves inherent dangers. DP&L further asserted that it had no knowledge of any abnormal dangers associated with the piping. DP&L also argued that appellant could not establish that it actively participated in appellant's work. DP&L thus asserted that summary judgment was warranted because appellant could not establish that a genuine issue of material fact remained as to whether DP&L breached a duty of care.

On January 31, 1997, appellant filed a memorandum in opposition to DP&L's motion for summary judgment. Appellant argued that he was not engaged in inherently dangerous work. Appellant contended that a pipe falling from above the area in which he was working did not constitute a danger inherent in the very nature of his particular task. Thus, appellant asserted, the general principles of R.C. 4101.11 and 4101.12 applied.

On January 31, 1997, appellant filed a motion for partial summary judgment. Appellant claimed that no genuine issue of material fact remained as to whether DP&L breached its statutory duty to provide appellant with a safe place to work or as to whether DP&L's failure to provide appellant with a safe place to work proximately caused his injuries.

On February 10, 1997, DP&L filed its reply to appellant's memorandum in opposition to DP&L's motion for summary judgment. DP&L argued that in his memorandum in opposition, appellant erroneously assumed that the safe place to work statutes, R.C. 4101.11 and 4101.12, controlled the outcome of the case. DP&L reiterated its position that the inherent danger exception applied and relieved it of liability for appellant's injury.

On February 24, 1997, DP&L filed a memorandum in opposition to appellant's motion for summary judgment, again reiterating its position that (1) appellant was engaged in inherently dangerous work, (2) DP&L did not actively participate

in appellant's work, and (3) DP&L possessed no knowledge of any abnormal dangers associated with appellant's work or the piping.

On September 22, 1997, the trial court overruled DP&L's motion for summary judgment and appellant's motion for partial summary judgment.

On June 26, 1998, DP&L filed a motion for reconsideration of the trial court's decision overruling its motion for summary judgment. DP&L requested the trial court to reconsider its previous decision in light of the Ohio Supreme Court's most recent decision concerning the inherent danger exception, *Sopkovich v. Ohio Edison Co.* (1998), 81 Ohio St.3d 628, 693 N.E.2d 233. On August 31, 1998, the trial court denied DP&L's motion.

As trial commenced, the duty that DP&L owed to appellant remained undefined. In their respective trial briefs, appellant persisted that he was not engaged in inherently dangerous work at the time of his injury and that the general rules of premises liability defined DP&L's duty, while DP&L maintained that appellant's work was inherently dangerous and that it owed appellant no duty, in the absence of active participation.

At trial, Mark Least, DP&L's project engineer involved with the update of the ignitor system, testified that Enerfab's contract required it to remove the old ignitor system. When appellant's trial counsel presented Least with the pipe that allegedly hit appellant, Least could not state with any certainty whether Enerfab's contract required it to remove the pipe. Least stated that he was uncertain of the pipe's origin. Least further testified that before KSI began painting, Enerfab had completed installing the new ignitor system. Least additionally stated that other than the heat from the nearby boiler, he knew of no hazards in the area where KSI was to paint.

John Knepfle, an engineer with DP&L, also was involved with the upgrade to the ignitor system. Knepfle testified that he checked Enerfab's work to make sure that they were following DP&L's contract specifications. Consistent with Least's testimony, Knepfle also stated that he would not have expected KSI's painters to encounter any unusual hazards. Knepfle specifically testified that he did not expect a pipe to fall.

Danny Ray Carroll, an Enerfab employee who worked on the ignitor system upgrade at DP&L, testified that Enerfab employees removed the existing ignitor system and replaced it with a new system. Carroll did not provide any insight into whether Enerfab should have removed the pipe that allegedly struck appellant. Appellant's trial counsel asked Carroll if he was worried that something might fall on him while working at the plant, to which Carroll responded: "Well * * * that's why we wear hard hats and safety glasses.* * *"

Similar to Carroll's testimony, appellant testified that "if you're working in a plant or something * * * you're always told to wear hard hats, you're always told to wear safety glasses * * *."

On September 18, 1998, after the close of appellant's case, DP&L moved for a directed verdict, pursuant to Civ.R. 50(A). DP&L based its motion upon essentially the same arguments it previously had presented in its motion for summary judgment. In its motion for a directed verdict, however, DP&L placed more emphasis on its argument that appellant had been working at a construction site, a setting which the Ohio Supreme Court, in Bond v. Howard Corp. (1995), 72 Ohio St.3d 332, 650 N.E.2d 416, recognized as an inherently dangerous setting. DP&L argued that Enerfab's installation of the new ignitor system constituted "construction" and that the "construction" continued to encompass the painting of the new pipes. DP&L's motion further asserted that appellant failed to present sufficient evidence regarding proximate cause.

At the hearing regarding DP&L's directed verdict motion, DP&L vigorously contested appellant's claim that his work was not inherently dangerous. DP&L argued that in determining whether appellant's work involved inherent dangers, the trial court should not consider only the specific act in which appellant was engaged, painting, as appellant asserted. Rather, DP&L urged the court also to consider the environment in which appellant performed his task.

To counter DP&L's argument, appellant contended that once Enerfab completed its task of installing the new ignitor system, the site no longer constituted a "construction site," and, thus, that the site was no longer "inherently dangerous." Appellant further asserted that his injury did not result from a danger inherent in the act of painting itself. Appellant argued that painting simply does not constitute an inherently dangerous task. Thus, appellant contended that the trial court should allow the jury to consider whether DP&L breached its duty to provide appellant with a safe place to work.

On September 23, 1998, the trial court granted DP&L's motion for a directed verdict. The trial court concluded that appellant's injury occurred in an inherently dangerous place and that appellant's job was inherently dangerous. The trial court noted that DP&L's plant "was a required hard hat area, which is customary with inherent dangers, and it was a construction site." Thus, the trial court concluded that DP&L could not be liable to appellant, unless appellant demonstrated that DP&L "actively participated" in appellant's work. The trial court noted that appellant conceded that DP&L did not actively participate.

On September 29, 1998, appellant voluntarily dismissed defendant Enerfab,

Inc. Appellant filed a timely notice of appeal.[1]

In his sole assignment of error, appellant asserts that the trial court erred by granting appellee's motion for a directed verdict. Specifically, appellant argues that the trial court erroneously interpreted the duty appellee, as the owner of the premises, owed to appellant, an employee of an independent contractor.

Appellant asserts that the trial court incorrectly determined that the "inherent danger" exception absolved appellee of liability. Appellant contends that his work was not inherently dangerous, and, therefore, R.C. 4101.11 and 4101.12 apply. Appellant argues that his injury did not result from an inherent danger associated with his job. Appellant insists that a falling pipe is not an inherent danger associated with painting in an industrial setting. Because appellant's injury was not caused by a danger inherent in his work, appellant argues, appellee owed him the duty of ordinary care to maintain a safe working environment.

Appellee maintains that the trial court did not err by granting its motion for a directed verdict. Appellee contends that the trial court correctly determined that the inherent danger exception absolved appellee of liability for appellant's injury.

Civ.R. 50(A)(4) sets forth the standard for granting a directed verdict:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

An appellate court reviews a trial court's decision regarding a motion for a directed verdict as a matter of law. See, e.g., *Wells v. Dayton Walther Corp.* (Aug. 6, 1996), Scioto App. No. 94CA2315, unreported, 1996 WL 447960.

"[W]hen a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury." *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 116, 430 N.E.2d 935, 938. Thus, in ruling upon a motion for a directed verdict, "the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion."

---

1. On February 18, 1999, appellant filed a motion to strike a portion of appellee's brief. Appellant requests this court to strike appellee's argument that the trial court's judgment granting a directed verdict in favor of appellee may be upheld alternatively on the grounds that appellant failed to present any probative evidence of proximate cause. Because we believe that our disposition on the merits renders appellant's motion to strike moot, we decline to rule upon appellant's motion to strike.

*Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469; see, also, *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 679, 693 N.E.2d 271, 273; *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252, 255. If substantial, competent evidence exists to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the court must deny the motion. See, *e.g., Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 33, 697 N.E.2d 610, 618; *Strother, supra; Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 115, 4 O.O.3d 243, 244, 363 N.E.2d 367, 368. The reasonable-minds test of Civ.R. 50(A)(4) requires the court to determine whether any evidence of substantial probative value exists to support the nonmoving party's claims. *Texler,* 81 Ohio St.3d at 680, 693 N.E.2d at 273.

In a negligence action, in order to survive a properly supported Civ.R. 50(A) motion, a plaintiff must present some evidence of substantial probative value tending to demonstrate all of the following: (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached the duty of care; and (3) that as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. See *Id.,* 81 Ohio St.3d at 680, 693 N.E.2d at 274; *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707.

Whether a defendant owed a plaintiff a duty is a fundamental aspect of establishing actionable negligence. *Jeffers, supra.* As the *Jeffers* court stated:

" ' * * * If there is no duty, then no legal liability can arise on account of negligence. Where there is no obligation of care or caution, there can be no actionable negligence.' (Footnotes omitted.) 70 Ohio Jurisprudence 3d (1986) 53–54, Negligence, Section 13. Only when one fails to discharge an existing duty can there be liability for negligence." *Id.,* 43 Ohio St.3d at 142, 539 N.E.2d at 616; see, also, *Strother, supra.*

Whether a duty exists on the part of a particular defendant is a question of law for the court to decide.[2] See *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270; *Wheeling & Lake Erie RR. Co. v. Harvey* (1907), 77 Ohio

---

**2.** We note that in *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 659 N.E.2d 1232, the Ohio Supreme Court remarked that a Civ.R. 50(A) motion ordinarily is an inappropriate method by which to resolve questions of law. The court noted that such questions generally should be resolved prior to trial. The court explained:

"[Civ.R. 50(A)] obviously presupposes that any questions of law have been previously resolved, and is concerned with questions of fact that are to be submitted to the jury * * *. Inasmuch as the standard is concerned with what determination could be reached by reasonable minds based upon the evidence presented, [a Civ.R. 50(A)] motion[ ][is] not the proper way to resolve a question dependent upon a ruling by the trial court on a matter of law." *Id.,* 74 Ohio St.3d at 435, 659 N.E.2d at 1239.

St. 235, 240, 83 N.E. 66, 68; *Blanton v. Pine Creek Farms* (1995), 100 Ohio App.3d 677, 685, 654 N.E.2d 1027, 1032–1033, discretionary appeal disallowed (1995), 72 Ohio St.3d 1530, 649 N.E.2d 839. We further note that "[s]imply because resolution of a question of law involves a consideration of the evidence does not mean that the question of law is converted into a question of fact or that a factual issue is raised." *Ruta*, 69 Ohio St.2d at 68, 23 O.O.3d at 116, 430 N.E.2d at 937. As stated in *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 219, 58 O.O.2d 424, 426–427, 280 N.E.2d 896, 899:

"[A] review of the evidence is more often than not vital to the resolution of a question of law. But the fact that a question of law involves a consideration of the facts or the evidence does not turn it into a question of fact."

In the case at bar, the ultimate dispute concerns the duty appellee owed to appellant. Appellee argues, and the trial court agreed, that because appellant was engaged in inherently dangerous work, appellee owed appellant no duty, in the absence of active participation. Appellant, on the other hand, asserts that his work was not inherently dangerous and that appellee, therefore, owed him a duty of care pursuant to the safe place to work statutes, R.C. 4101.11 and 4101.12.[3]

R.C. 4101.11 and 4101.12 set forth the general rule regarding the duty that an employer of an independent contractor owes to the employees of an independent contractor.[4] R.C. 4101.11 and 4101.12 require employers to provide employees and frequenters[5] with a safe place to work. R.C. 4101.11 provides:

---

While we recognize the *Gallagher* court's statement that a Civ.R. 50 motion is not the proper method to resolve a question of law, we note that in the case at bar, both appellee and appellant, in their respective summary judgment motions, had presented their arguments concerning appellee's duty to appellant. The trial court, however, did not resolve the issue. Thus, when trial began, appellee's duty had yet to be defined. Apparently, the trial court delayed ruling upon this question of law until it believed due consideration had been given.

3. Although not noted by either appellant or appellee, we recognize that a few cases have held that whether work is inherently dangerous is a question of fact to be submitted to the jury. See, generally, *Warden v. Pennsylvania Rd. Co.* (1931), 123 Ohio St. 304, 175 N.E. 207; *Bohme, Inc. v. Sprint Internatl. Communications Corp.* (1996), 115 Ohio App.3d 723, 686 N.E.2d 300, discretionary appeal not allowed (1997), 78 Ohio St.3d 1442, 676 N.E.2d 1187. We find these case inapposite. Moreover, we note that subsequent cases seem to address the question of whether work is inherently dangerous as a matter of law. See, e.g., *Bond*, 72 Ohio St.3d at 336, 650 N.E.2d at 420 (finding, as a matter of law, that a construction site is an inherently dangerous setting).

4. In the case at bar, we note that the parties do not dispute that, at the time of appellant's injury, appellant was an employee of an independent contractor and that appellee was the employer of the independent contractor.

5. As used in R.C. 4101.11 and 4101.12, a "frequenter" includes an employee of an independent contractor. See, *e.g.*, *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 512 N.E.2d 1165, syllabus.

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

R.C. 4101.12 provides:

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

The duties set forth in R.C. 4101.11 and 4101.12 are "no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge." *Eicher*, 32 Ohio St.3d at 249, 512 N.E.2d at 1167; see, also, *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, paragraph one of the syllabus.

The duties set forth in R.C. 4101.11 and 4101.12 generally do not apply, however, when the independent contractor engages in inherently dangerous work. In *Wellman*, the court explained the "inherent danger" exception as follows:

"1. Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.

"2. One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance." *Id.*, at paragraphs one and two of the syllabus; see, *e.g., Sopkovich v. Ohio Edison Co.* (1998), 81 Ohio St.3d 628, 636–637, 693 N.E.2d 233, 239.

Thus, the duty of care as set forth in R.C. 4101.11 and 4101.12 does not apply "to hazards which are inherently and necessarily present because of the nature of the work performed * * *." *Eicher*, 32 Ohio St.3d at 249, 512 N.E.2d at 1167; see, *e.g.*, *Schwarz v. Gen. Elec. Realty Corp.* (1955), 163 Ohio St. 354, 56 O.O. 319, 126 N.E.2d 906.

Furthermore, for the "inherent danger" rule of nonliability to apply, the independent contractor must know or appreciate that a degree of danger "surrounds" the performance of the task for which he was hired. See *Wellman*, at paragraph two of the syllabus; see, also, *Sopkovich*, 81 Ohio St.3d at 643, 693 N.E.2d at 244 (stating that plaintiff was aware that painting a partially de-energized substation is an inherently dangerous activity); *Bond*, 72 Ohio St.3d at 336, 650 N.E.2d at 420 (stating that plaintiff was aware of dangers lurking within construction site). As the *Wellman* court explained, liability may attach when "an independent contractor and his employees enter[ ] upon the premises of the owner or occupier thereof, at his invitation, to perform work for him, *unaware and uninformed as to a dangerous condition on the premises created by the owner or of which he had knowledge.* In such circumstances, an employee of the independent contractor, who suffers injury by reason of the dangerous condition may recover damages from the owner for such injury, on the ground that the owner is chargeable with actionable negligence in failing to remove the dangerous condition or to give notice or warning of its existence." (Emphasis added.) *Id.*, 160 Ohio St. at 107, 51 O.O. at 29, 113 N.E.2d at 632; see, also, *Schwarz*, 163 Ohio St. at 360, 56 O.O. at 321, 126 N.E.2d at 910 (stating that inherent danger exception inapplicable when "the independent contractor and his employees enter upon the premises of the contractor's employer as his invitees, unaware and uninformed of hidden dangers on the premises which had been created by the employer or of which he had full knowledge"). Thus, when either the independent contractor or his employee[6] is aware that real or potential dangers surround the performance of the task for which the independent contractor was hired, generally, no liability will attach to the owner or occupier of the premises.

Being "aware" of the danger(s) surrounding the performance of the task, as used above, does not require the independent contractor or its employee to have actual knowledge of the danger(s). Rather, constructive notice of the danger will suffice. See *Eicher*, 32 Ohio St.3d at 249, 512 N.E.2d at 1167 (stating that one

---

**6.** *Schwarz* held that "notice to the independent contractor of hazards within the employment area is notice to his employees, as such independent contractor has the duty to transmit such notice or warning to his individual employees." *Id.*, 163 Ohio St. at 359, 56 O.O. at 321, 126 N.E.2d at 910. Thus, derived from the foregoing rule, if the independent contractor knew or should have known that a degree of danger surrounded the performance of the task, the independent contractor bears the burden of informing his employees of the danger. See, also, *Eicher*, 32 Ohio St.3d at 250, 512 N.E.2d at 1168 (stating that the primary responsibility of protecting an independent contractor's employees rests with the independent contractor).

who engages independent contractor may be liable for injury caused by abnormal danger " 'only if the principal employer has, and the servant has not, actual or constructive notice of the existence of such condition.' *Davis v. Charles Shutrump & Sons Co.* (1942), 140 Ohio St. 89, 23 O.O. 299, 42 N.E.2d 663, paragraph one of the syllabus")[7]; see, also, *Betzner v. Navistar Internatl. Transp. Corp.* (1991), 77 Ohio App.3d 611, 614, 603 N.E.2d 256, 259 (finding that although plaintiff may not have possessed actual knowledge of specific type of injury, plaintiff should have known that such injury was likely); *Mincy v. Universal Constructors, Inc.* (Mar. 26, 1997), Lorain App. No. 96CA6464, unreported, 1997 WL 197084, discretionary appeal not allowed (1997), 79 Ohio St.3d 1460, 681 N.E.2d 442 (stating that "[a] subcontractor's employee has notice of a dangerous condition if either he or his employer had knowledge of that condition"); *Pifher v. Ford Motor Co., Inc.* (Aug. 10, 1994), Lorain App. No. 93CA5581, unreported, 1994 WL 431544, discretionary appeal not allowed (1995), 71 Ohio St.3d 1447, 644 N.E.2d 409.

The rule of nonliability will not apply, however, when the owner or occupier of the premises "actively participates" in the independent contractor's work. See, *e.g., Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, syllabus. " '[A]ctively participated' means that the [one engaging the independent contractor] directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project. * * *." *Bond,* 72 Ohio St.3d 332, 650 N.E.2d 416, syllabus; see, *e.g., Sopkovich,* 81 Ohio St.3d at 640, 693 N.E.2d at 242 (stating that merely exercising a general supervisory role over the project is insufficient to constitute active participation); *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 112–113, 21 OBR 416, 417–419, 488 N.E.2d 189, 192 (stating that "actual participation" includes giving or denying permission for the critical acts that lead to the injury, and excludes a mere concern for safety); *Hirschbach,* 6 Ohio St.3d at 208, 6 OBR at 260–261, 452 N.E.2d at 329 (explaining that "actual participation" includes retaining "sole control over the safety features necessary to eliminate the hazard").[8]

In the case at bar, the extent of appellee's duty depends upon whether appellant's task constituted "inherently dangerous" work. If we agree with the

---

**7.** *Eicher* thus implies that if the independent contractor possesses actual or constructive knowledge of the condition, no liability will attach to the one engaging the independent contractor.

**8.** Although the cases refer to both "actual" and "active" participation, no apparent difference exists between the two terms. See *Bell v. DPL, Inc.* (Aug. 31, 1999), Adams App. No. 98CA663, unreported, at fn. 2, 1999 WL 713589.

trial court's conclusion that appellant was engaged in inherently dangerous work, then we are bound to conclude that appellee owed appellant no duty in the absence of active participation. See, generally, *Sopkovich; Cafferkey.* If, however, we conclude that appellant's work did not involve elements of real or potential danger, then the common-law duties applicable to owners or occupiers of land apply. See, generally, *Hirschbach; Eicher.* In resolving the foregoing question, the crucial issue obviously is whether appellant was engaged in inherently dangerous work.

Appellant argues that his work did not constitute inherently dangerous work because the instrument causing his injury, the pipe, was completely outside the scope of his specific work activities. Appellant further contends that because the pipe was a " 'hazard[ ] which could [have] be[en] eliminated by the exercise of ordinary care by' " DP&L, the danger that the pipe posed did not constitute an inherent danger. See *Hirschbach,* 6 Ohio St.3d at 208, 6 O.B.R. at 260–261, 452 N.E.2d at 329, fn. 2, quoting *Parsons v. Blount Bros. Constr. Co.* (C.A.6, 1960), 281 F.2d 414, 417. Additionally, appellant disputes appellee's assertion that appellant performed his work at a construction site.

Appellee, on the other hand, contends that appellant's work involved elements of real or potential danger primarily because appellant was working at a construction site, a site which the Ohio Supreme Court specifically recognized as containing inherent dangers. Alternatively, appellee asserts that similar to a construction site, an industrial setting where hard hats are required presents endless possibilities of inherent dangers. Furthermore, appellee disagrees with appellant's argument that in considering whether work involves inherent dangers, courts should examine only the specific task in which the injured independent contractor's employee was engaged. Instead, appellee posits that courts also must consider the environment in which the work was performed.

We find our consideration of the issue difficult because an "inherent danger," for purposes of the *Wellman* line of cases, has not been defined with any degree of clarity. Work has been defined as "inherently dangerous" when hazards are inherent and necessarily present because of the nature of the work performed. *Schwarz, supra,* paragraph one of the syllabus. Additionally, "inherently dangerous" work includes tasks which, because of their nature, contain[ ] "elements of real or potential danger." *Wellman.*

In *Bohme, Inc. v. Sprint Internatl. Communications Corp.* (1996), 115 Ohio App.3d 723, 686 N.E.2d 300, discretionary appeal not allowed (1997), 78 Ohio St.3d 1442, 676 N.E.2d 1187,[9] the court expanded upon what constitutes an

---

9. Although we note that *Bohme* is not factually similar to the case at bar, we nonetheless find its discussion of inherently dangerous work enlightening.

"inherently dangerous" task by explaining that "inherently dangerous" work involves " 'work which, although not highly dangerous, involves a risk recognizable in advance that danger inherent in the work itself, or in the ordinary or prescribed way of doing it, may cause harm to others.' " *Id.,* 115 Ohio App.3d at 736, 686 N.E.2d at 309, quoting Restatement of the Law 2d, Torts, (1965), Section 427, Comment C. The *Bohme* court continued: "Thus, an inherently dangerous activity need not be extremely or even highly dangerous * * *." *Id.,* 115 Ohio App.3d at 736, 686 N.E.2d at 309.

Because the foregoing explanations regarding inherent dangers offer little practical guidance in determining whether dangers inhere in a particular task, the decision generally has been made on a case-by-case basis. See *Sopkovich,* 81 Ohio St.3d at 643, 693 N.E.2d at 244 (painting a partially de-energized substation is an inherently dangerous activity); *Bond,* 72 Ohio St.3d at 336, 650 N.E.2d at 420 (setting forth a bright-line rule that "[a] construction site is inherently a dangerous setting"); *Best v. Energized Substation Serv. Inc.* (1993), 88 Ohio App.3d 109, 114, 623 N.E.2d 158, 161, jurisdictional motion overruled (1993), 67 Ohio St.3d 1488, 621 N.E.2d 410 (stating that working around electrical fields involves inherent dangers); *Hesselbach v. Toledo Museum of Art* (1995), 72 Ohio Misc.2d 33, 655 N.E.2d 831 (stating that hanging wall fabric, which requires independent contractor employee to use scaffolding, involves inherent dangers); *Mincy, supra* (finding that shower stall doors falling on independent contractor's employee due to "uneven load" is an inherent danger in removing materials from a truck); *Miller v. Proctor & Gamble Mfg. Co.* (Dec. 20, 1989), Allen App. No. 1–88–36, unreported, 1989 WL 153599, jurisdictional motion overruled (1990), 50 Ohio St.3d 712, 553 N.E.2d 1367 (finding that soap spilling on floor is an inherent danger of task involving cleaning soap from products on production line); *Connors v. Brownrigg* (Oct. 1, 1998), Cuyahoga App. No. 73465, unreported, 1998 WL 686256 (stating that inspection of abandoned home with no electricity involves inherent dangers); *Castle v. Columbus Roof Trusses, Inc.* (Dec. 12, 1995), Franklin App. No. 95APE06–822, unreported, 1995 WL 739912, discretionary appeal not allowed (1996), 75 Ohio St.3d 1497, 664 N.E.2d 1294 (stating that installing preassembled roof trusses is inherently dangerous work); *Moore v. McClain* (Aug. 31, 1992), Warren App. No. CA91–11–088, unreported, 1992 WL 210653, jurisdictional motion overruled (1993), 65 Ohio St.3d 1498, 605 N.E.2d 952 (stating that removal of tree infested with termites and carpenter ants involves elements of danger, even though plaintiff complained of being unaware of extent of rot in tree; plaintiff claimed that had he known how rotten tree was, he would have taken additional precautions).

As the foregoing cases illustrate, whether one is engaged in inherently dangerous work ordinarily is not a difficult question. In the majority of cases discussing

inherently dangerous work, common sense dictates that the work is inherently dangerous. See *Komenovich v. AK Steel Corp.* (Jan. 25, 1999), Butler App. No. CA98–08–172, unreported, 1999 WL 31139 (suggesting that inherent danger is one that is open and obvious). One could not question that a construction site, for example, contains many perils and pitfalls and, thus, that working at a construction site is inherently dangerous. See, *e.g., Bond,* 72 Ohio St.3d at 336, 650 N.E.2d at 420. Moreover, painting a partially de-energized electrical station, because of the obvious risk of electrocution, is inherently dangerous work. See *Sopkovich,* 81 Ohio St.3d at 643, 693 N.E.2d at 244. Additionally, working around powerful electrical lines obviously involves dangers that are necessarily present. See *Best,* 88 Ohio App.3d at 114, 623 N.E.2d at 161. In the case at bar, we would no doubt conclude that appellant had suffered injury as a result of dangers inherent in his task if appellant had been electrocuted or had suffered injury from the boiler next to which he was painting. The facts in the case at bar, however, are not that simplistic.

At the outset, we are not prepared to conclude that appellant was working at a construction site at the time of his injury. The parties do not dispute that Enerfab had completed installing the new system, and that appellant was present to paint the newly installed pipes. No "construction," in the ordinary sense, was occurring.[10] Consequently, we continue to examine the following cases to determine whether a danger inherent in appellant's task caused appellant's injury.

In *Bond,* the plaintiff, an independent contractor's employee, was constructing a wall at a construction site. The materials the plaintiff needed to perform his task were located near an unguarded opening on the second floor of the site. As the plaintiff was gathering some materials, he fell through the unguarded opening and sustained severe injuries. The court applied the inherent danger exception, although one could argue that falling through an unguarded opening is not an inherent danger of constructing a wall. The *Bond* decision implies that in determining whether a task involves inherent dangers, the court should not construe "inherent dangers" narrowly. Rather, the court should examine the circumstances surrounding the work activities· as well as the work itself to determine whether the performance of a task contains elements of real or potential danger. The *Bond* court concluded that the environment in which the plaintiff had been working was inherently dangerous:

---

**10.** We note that in *Sopkovich,* the plaintiffs, like appellant in the case at bar, had been painting pipes at an electric substation; yet, the *Sopkovich* court did not find the plaintiffs' work inherently dangerous because they performed the work at a construction site. Instead, the court concluded that painting a partially de-energized substation, when the plaintiffs were aware of the risk of electrocution, constitutes inherently dangerous work.

"A construction site is inherently a dangerous setting. See *Whitelock v. Gilbane Bldg. Co.* (1993), 66 Ohio St.3d 594, 600, 613 N.E.2d 1032, 1036 (Pfeifer, J., dissenting). [Plaintiff] was aware that the materials for the construction of the wall had been placed near the opening by a Valentine employee and that a railing had not been placed in front of the opening." *Bond,* 72 Ohio St.3d at 336, 650 N.E.2d at 420; see, also, *Michaels,* 72 Ohio St.3d at 478, 650 N.E.2d at 1355, fn. 4.

In *Adkins v. Armco Steel Co.* (Apr. 15, 1996), Butler App. Nos. CA95–07–119, CA95–08–132 and CA95–08–142, unreported, 1996 WL 174618, the plaintiff was an employee of the subcontractor. The plaintiff's duties included dismantling a large "pusher furnace" located inside Armco Steel. While working inside Armco's furnace, "something" struck plaintiff in the back and knocked him to the floor. Although the object that caused the plaintiff's injury was not directly associated with the plaintiff's particular task, the court of appeals nonetheless found that the plaintiff's work constituted inherently dangerous work. Thus, the court concluded that no liability could attach to Armco.

In *Hedrick v. Ohio Power Co.* (July 13, 1992), Stark App. No. CA–8908, unreported, 1992 WL 173345, the plaintiff was employed by Babcock & Wilson, an independent contractor, as a welder at an Ohio Power plant. The plaintiff's duties included replacing five cyclones and the furnace floor tubes on boiler units. The boilers were suspended approximately thirty feet from the ground floor. The independent contractor's employees worked from scaffolds suspended near the boilers and from catwalks positioned around the base of the boilers. As the plaintiff attempted to hand a co-employee a pry bar, the plaintiff stepped onto one of the catwalk's handrails. As the plaintiff stood on the handrail, a weld gave way and the plaintiff fell. The trial court granted Ohio Power's motion for summary judgment.

On appeal, the court affirmed the trial court's decision, concluding that the plaintiff had been engaged in inherently dangerous work. The court noted that Ohio Power did not possess actual or constructive knowledge of any defective condition associated with the handrail.

Similar to appellant in the case at bar, the *Hedrick* plaintiff sought to establish that his injury was not caused by a danger inherent in his particular task. The plaintiff argued that a loose weld on the handrail was not a danger he perceived as inhering in his task. The court, however, rejected the plaintiff's argument, stating:

"Appellant attempts to distinguish *Wellman* and its progeny on the basis that appellant was injured not in the course of welding but rather as a result of simply being on the defendant's property in an area where he was supposed to be and not being forewarned of the dangerous condition of the railing. We agree with

appellee that appellant's attempt to distinguish *Wellman* from the instant situation is flawed and untenable. Appellant's conduct at the time of his fall was 'part and parcel' of the work being performed by [the independent contractor] on the subject broiler."

In *Pelfrey v. Union Oil Co. of California* (Sept. 23, 1988), Wood App. No. WD–87–74, unreported, 1988 WL 98236, the court rejected a similar argument to the one raised in *Hedrick*. In *Pelfrey*, the plaintiff suffered injury when he fell at the truck stop where he had been delivering fuel. The plaintiff alleged that oil and water had accumulated, rendering the area slippery. The court found no violation of the safe place to work statutes.

While recognizing that the plaintiff asserted that delivering fuel is not an inherently dangerous task, the court stated:

"We agree that delivering fuel may not be dangerous in itself[;] however, there is no reason to construe [the *Wellman*] line of cases so narrowly. *Eicher, supra,* merely lessens the burden of duty placed upon employers and landowners, who, by necessity, routinely have frequenters on their property. * * * [I]t is 'common knowledge' that fuel deliveries result in regular oil spillage on the island."

In *Ruprich v. Cincinnati Gas & Elec. Co.* (Nov. 24, 1986), Butler App. No. CA86–02–009, unreported, 1986 WL 13270, the court concluded that the danger causing the plaintiff's injury fell outside the dangers necessarily present because of the nature of the work to be performed. In *Ruprich*, Champion engaged Ruprich as an independent contractor to insulate pipes at Champion's place of business. When Ruprich stepped away from his work area to clean his metal tape measure, the tape measure contacted a charged electrical line located ten feet outside the nearby window. The court refused Champion's request to apply the inherent danger exception because "the electric line Ruprich's tape measure came into contact with was ten feet outside the building where Ruprich was working, and it was not connected, directly or indirectly, with the task for which Ruprich's presence on Champion's premises was necessary. Indeed, the electric line Ruprich's tape measure touched was not even a part of the premises where he was working. Because Ruprich was hired to insulate boilers, tanks, and pipes, it was outside the contemplation of his job duties as an insulator that he would have contact with such electric lines, particularly those completely outside the premises in which he was installing insulation."

Thus, having concluded that a danger inherent in Ruprich's work did not cause his injury, the court applied general principles of premises liability. The court nevertheless found that Champion owed Ruprich no duty because the act causing Ruprich's was completely unforeseeable. See, also, *Wheeler v. GTE North, Inc.* (June 22, 1995), Jackson App. No. 94CA744, unreported, 1995 WL 392871, discretionary appeal not allowed (1995), 74 Ohio St.3d 1447, 656 N.E.2d 347

(finding that the complete collapse of a utility pole is not an inherent danger of climbing the pole; rather, inherent dangers include electrocution or falling off); *Emch v. USAir, Inc.* (Mar. 22, 1991), Lucas App. No. L–89–167, unreported, 1991 WL 38041, motion to certify overruled (1991), 61 Ohio St.3d 1421, 574 N.E.2d 1092 (finding that falling from wobbly stairs which independent contractor employee must use to enter aircraft to perform task does not constitute a danger inherent in the particular task).

From the foregoing rules and cases, we derive the following principles. First, a danger is an inherent danger if it is necessarily present because of the nature of the work to be performed. See, *e.g., Michaels.* Second, for the danger to be considered inherent in the work itself, the independent contractor or his employee must recognize or should recognize the risk involved in the work. See, *e.g., Sopkovich; Bond; Wellman.* Cf. *Ruprich* (stating that the danger was not inherent because it fell "outside the contemplation of his job duties"). In determining whether the danger is inherent in the work itself, one should examine not only the specific task, but also the environment in which the task is performed. See, *e.g., Sopkovich* (not limiting inquiry to specific task, painting; rather, expanding inquiry to consider environment, an electrical substation); *Bond* (holding environment, construction site, inherently dangerous); *Koch v. Lind* (1997), 121 Ohio App.3d 43, 57, 698 N.E.2d 1035, 1044 (implying that delivering materials in a high-crime area [an environment] is an inherently dangerous activity to which general rule of nonliability applies); *Abbott v. Jarrett Reclamation Serv. Inc.* (1999), 132 Ohio App.3d 729, 726 N.E.2d 511 (stating that "working in or near a deep trench on a construction site" involves inherent dangers); *Komenovich v. AK Steel Corp.* (Jan. 25, 1999), Butler App. No. CA98–08–172, unreported, 1999 WL 31139 (finding that working above moving machinery is an inherently dangerous task). The *Wellman* rule of nonliability is inapplicable if the independent contractor or his employee do not know of or appreciate the danger, but only if the owner or occupier is in a position of superior knowledge, *i.e.,* only if the owner or occupier possesses actual or constructive knowledge of the danger. See *Eicher.*

Stated differently, the performance of a task is inherently dangerous when the independent contractor recognizes or should recognize that a degree of danger surrounds the performance of the task for which he was engaged. In answering the foregoing question, courts should not limit the inquiry to the specific task being performed. Rather, courts also should consider the environment in which the task is performed. The owner or occupier of the premises will not be liable for an injury resulting from a danger inherent in a task when the injury was reasonably foreseeable to the independent contractor, *i.e.,* the independent con-

tractor knows or appreciates that degree of danger that "surrounds" the task's performance. *Wellman, supra,* paragraph two of the syllabus.

Applying the foregoing principles to the case at bar, we believe that appellant's task, painting in a commercial, industrial setting where hard hats are required, involved inherent dangers of which appellant knew or should have known. The requirement that persons present in the plant wear hard hats should put an independent contractor who enters the premises on notice that objects, including pipes and other matter, have the potential to fall. Overhead pipes were everywhere in this facility. No hidden dangers were involved in this case. While we agree with appellant that painting generally is not, in and of itself, dangerous, we believe that an independent contractor engaged to paint in an industrial environment should recognize that real or potential dangers exist. The independent contractor's employee's injury in the instant case cannot be deemed to be beyond the realm of foreseeable risks given this industrial workplace environment. As the court recognized in *Schwarz,* 163 Ohio St. at 359, 56 O.O. at 321, 126 N.E.2d at 910: "Any large industrial plant must necessarily have within its confines many potential hazards which can not be wholly eliminated and whose presence can not always be subject to notice. * * *."

Our holding does not, as appellant suggests, imply that the owner of an industrial plant can never be liable for an injury that an independent contractor's employee may suffer upon its premises. The owner of the premises may be liable when the event causing the injury was unforeseeable to the independent contractor or his employee and when the premises owner was in a position of superior knowledge. For example, if the premises owner allowed an independent contractor's employee to use one of the owner's ladders which the owner clearly knew or should have known was defective, when the independent contractor lacked either actual or constructive knowledge of the defective nature of the ladder, we do not believe that our holding would bar an independent contractor's employee from maintaining a claim against the owner of the premises.[11]

Appellant nonetheless relies upon a footnote in *Hirschbach* to support his argument that his injury was not caused by a danger inherent in his work. Appellant asserts that inherent dangers do not include " 'hazards which could be eliminated by the exercise of ordinary care by those in custody and control of the premises.' " *Hirschbach,* 6 Ohio St.3d at 208, 6 OBR at 261, 452 N.E.2d at 329,

---

**11.** Our holding in *Wheeler, supra,* illustrates the foregoing principle. In *Wheeler,* the plaintiff, an independent contractor, was engaged to remove and replace wires located on a pole jointly owned by GTE. Prior to climbing the pole, the plaintiff followed established safety procedures to determine whether the pole was safe to climb. A red tag indicated that the pole was.

To the extent that our *Wheeler* decision appears to conflict with the case at bar, we believe that *Wheeler* also tends to demonstrate active participation on GTE's part.

fn. 2, quoting *Parsons v. Blount Bros. Constr. Co.* (C.A.6, 1960), 281 F.2d 414, 417. Thus, appellant asserts, because appellee, by the exercise of reasonable care, could have eliminated the hazard the loose pipe posed, the pipe did not constitute an inherent danger associated with his work.

We do not believe, however, that the *Hirschbach* court intended its *Parsons* quotation to constitute a definitive statement as to what constitutes an inherent danger. Rather, looking to the context in which the court used the quotation leads us to conclude that the court simply used the language to elaborate upon its holding that one who engages an independent contractor has no liability for injury to one of the independent contractor's employees, unless the one engaging the independent contractor "actually participates" and, as a result of the actual participation, fails to eliminate a hazard which he could have eliminated in the exercise of ordinary care.[12] See *Snow v. Freed* (May 16, 1990), Hamilton App. No. C–890064, unreported, at fn. 2, 1990 WL 62918, jurisdictional motion overruled (1990), 55 Ohio St.3d 703, 562 N.E.2d 894 ("As the court's opinion in *Parsons* indicates, the question of whether a danger is an 'inherent' hazard depends in large part upon whether the owner of the premises has retained control of the premises, and whether the owner or the contractor is responsible for the elimination of or protection against the danger. In this sense, the question becomes one of whether the owner has 'actively participated' in the activity.").

Moreover, we note that the law is stated in the syllabus, not the opinion. See S.Ct.R.Rep.Op. 1(B) ("The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication."); *World Diamond, Inc. v. Hyatt* (1997), 121 Ohio App.3d 297, 306, 699 N.E.2d 980, 985–986; *State v. Walker* (1999), 134 Ohio App.3d 89, 730 N.E.2d 419 (Harsha, J., dissenting). A plain reading of the *Hirschbach* syllabus demonstrates that the owner first must "actually participate," prior to examining whether the owner failed to eliminate a hazard which could have been eliminated.

---

12. We note an additional reason to reject appellant's argument that footnote two of *Hirschbach* set forth a "definition" of what is not inherently dangerous work. If we were to accept appellant's argument that footnote two defines what is not an inherent danger, then one essentially could rewrite the *Hirschbach* syllabus to read as follows:

"One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which is not a hazard inherent in the work to be performed, can be held responsible for the injury or death of an employee of the independent contractor."

To rewrite the *Hirschbach* syllabus as above leads to an illogical result. If the hazard is not inherent, then no need for an actual participation analysis exists. Consequently, we can only conclude that the *Hirschbach* court never intended the *Parsons* quotation to be used as a definitive statement of what does not constitute an inherently dangerous task.

Appellant also seeks to defeat the inherent-danger exception by claiming that appellee possessed superior knowledge of the dangerous condition of the pipes. Appellant argues that appellee possessed superior knowledge because appellee created the dangerous condition. We find no merit to appellant's argument. No evidence exists that appellee possessed any knowledge of the condition of the pipes. To impute knowledge to appellee would be tantamount to making appellee an insurer of the premises. See, generally, *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 203, 18 OBR 267, 267–268, 480 N.E.2d 474, 475 (stating that a premises owner is not an insurer of his premises).

Having concluded that appellant's work contained inherent dangers and that appellant's injury resulted from a danger inherent in his work, appellant's claim against appellee must fail unless appellant demonstrates that appellee actively participated in KSI's (appellant's employer) work. We note, however, that appellant, by admitting at the hearing regarding appellee's directed verdict motion that he need not demonstrate active participation and by presenting no evidence regarding active participation at the hearing or during trial, effectively waived the issue. See, *e.g., Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 436–437, 659 N.E.2d 1232, 1240; *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 220, 574 N.E.2d 457, 462; *Conley v. Norfolk & W. Ry. Co.* (June 7, 1999), Scioto App. No. 98CA2611, unreported, 1999 WL 378348.

Assuming, *arguendo*, that appellant had not waived the issue, we find no evidence in the record that appellee actively participated in KSI's work. As stated above, " 'actively participated' means that the [one engaging the independent contractor] directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project. * * *." *Bond,* 72 Ohio St.3d 332, 650 N.E.2d 416, syllabus.

In *Sopkovich,* 81 Ohio St.3d at 643, 693 N.E.2d at 243, the court further explained "active participation" as follows:

"[A]ctive participation giving rise to a duty of care may be found to exist where a property owner either directs or exercises control over the work activities of the independent contractor's employees, or where the owner retains or exercises control over a critical variable in the workplace."

"Active participation" does not include mere supervision of an independent contractor's work or exhibiting a general concern for safety. See, *e.g., Cafferkey,* syllabus; *Bond.*

In the case at bar, the evidence demonstrates that appellee did not actively participate in appellant's employer's work. Appellee merely supervised the work activities and ensured that the work was performed according to its specifica-

tions. No evidence exists that appellee directed or exercised control over appellant's work activities or that appellee retained exclusive control over a critical variable in the workplace. We find no merit to appellant's argument that appellee actively participated by informing KSI of the areas to paint. We also find no merit to appellant's argument that appellee, by virtue of its ownership of the pipe, retained exclusive control over a critical variable in the work environment.

Appellant concludes his argument regarding active participation by asserting that the Ohio Supreme Court, by remanding *Cefaratti v. Mason Structural Steel Co., Inc.* (1998), 82 Ohio St.3d 121, 694 N.E.2d 915, intended to narrow *Sopkovich's* interpretation. We find no merit to appellant's argument. In *Burnep v. Labmark, Inc.* (June 17, 1999), Franklin App. No. 98AP–962, unreported, 1999 WL 394201, the appellants similarly argued that *Cefaratti* somehow modified *Sopkovich.* The *Burnep* court disagreed, noting:

" * * * *Cefaratti* is a cryptic one-sentence decision and gives very little guidance as to how *Sopkovich* might be applied. There is no mention in *Cefaratti* of overruling *Bond,* or the long line of cases, which preceded *Bond.* In short, *Cefaratti,* in the absence of any development of the facts or application of law, is of very limited precedential value in the face of the long, well articulated line of contrary cases to which appellee can cite. We therefore conclude that neither *Sopkovich* nor *Cefaratti* give[s] us grounds for disregarding the clear law set forth in *Bond, Hirs[c]hbach,* and *Cafferkey* * * *."

Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

*Judgment affirmed.*

HARSHA, J., concurs in judgment only.

EVANS, J., dissents.

EVANS, Judge, dissenting.

I must respectfully dissent from the judgment of my colleagues.

Dayton Power and Light Company (hereinafter "DP&L") employed Enerfab, Inc. ("Enerfab") to update an igniter system on a boiler at one of its power plants. In order to update this system, Enerfab had to remove piping and conduit used with the old system, then install replacement piping and conduit for the new system. Enerfab had completed this project and vacated the premises at the time DP&L employed Kessinger Services Industries ("KSI") to paint this new piping, in an effort to color-code the new pipes according to function.

Appellant, a professional painter, was an employee of KSI. KSI directed appellant to paint these pipes in the DP&L boiler room in accordance with instructions provided by DP&L. While painting a pipe only a few inches above the floor of the boiler room, appellant was struck on the head and neck by a falling iron pipe. This pipe was about two feet in length and perhaps an inch in diameter.

The general rule is that the owner of a building has a duty to protect visitors from hidden hazards. It is at this point in the majority analysis regarding the exceptions to this general rule that my position and opinion diverge from that of the majority. Appellant's status is clearly that of a business invitee or frequenter. The Restatement of the Law 2d, Torts (1965) 176, Section 332, defines a "business visitor" as a category of invitee, stating:

"(1) An invitee is either a public invitee or a business visitor.

"(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

The comment to Subsection (3) states:

"Business visitors fall into two classes. The first class includes persons who are invited to come upon the land for a purpose connected with the business for which the land is held open to the public, as where a person enters a shop to make a purchase, or to look at goods on display. Where this distinction arises, a business visitor of this class is hereafter called a patron.

"The second class includes those who come upon land not open to the public, for a purpose connected with business which the possessor conducts upon the land, or for a purpose connected with their own business which is connected with any purpose, business or otherwise, for which the possessor uses the land. Thus a truck driver from a provision store who enters to deliver goods to a private residence is a business visitor; and so is a workman who comes to make alterations or repairs on land used for residence purposes." *Id.* at 179–180.

See discussion in *Newton v. Pennsylvania Iron & Coal, Inc.* (1993) 85 Ohio App.3d 353, 619 N.E.2d 1081; *Scheibel v. Lipton* (1951), 156 Ohio St. 308, 46 O.O. 177, 102 N.E.2d 453, paragraph one of the syllabus.

Once it is established that appellant's legal status is that of a business invitee in the case *sub judice*, the question becomes what duty is owed appellant by appellee DP&L in this matter. What duty does a business owner owe to a business invitee? Prosser & Keeton, The Law of Torts (5 Ed.1984) 419, states:

"[A]s to those who enter premises upon business which concerns the occupier, and upon his invitation, express or implied, the latter is under affirmative duty to protect them, not only against dangers of which he knows, but also against those which with reasonable care he might discover."

The Supreme Court of Ohio has held that once the evidence establishes that a dangerous condition existed, and that it is a condition about which the owner should have known, evidence of actual knowledge on his part is unnecessary. See *Perry v. Eastgreen Realty Co.* (1978), 53 Ohio St.2d 51, 52, 7 O.O.3d 130, 130–131, 372 N.E.2d 335, 336, relying upon Prosser on Torts (4 Ed.1971) 392–393. As set forth in Prosser & Keeton, The Law of Torts (5 Ed.1984) 425–426:

"The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. But the obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm. The occupier must not only use care not to injure the visitor by negligent activities, and warn him of hidden dangers known to the occupier, *but he must also act reasonably to inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use of the property.* The obligation extends to the original construction of the premises, where it results in a dangerous condition." (Emphasis added.)

"Thus, an employer may be liable to an independent contractor, as an invitee, for injuries caused by a dangerous condition but, only if he knew or reasonably should have known of the condition." *Cyr v. Bergstrom Paper Co.* (1982) 3 Ohio App.3d 299, 301, 3 OBR 345, 347–348, 444 N.E.2d 1349, 1352. Hence DP&L owed appellant, as a business invitee, a duty "to keep [the] premises in a reasonably safe condition and to give warnings of latent or concealed perils of which [it] has, or should have, knowledge." *Westwood v. Thrifty Boy Super Markets, Inc.* (1972), 29 Ohio St.2d 84, 86–87, 58 O.O.2d 154, 156, 278 N.E.2d 673, 675. This duty owed to employees of independent contractors in their capacity as business invitees is the same whether it arises at common law or pursuant to R.C. 4101.11. See *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 249, 512 N.E.2d 1165, 1167; *Debie v. Cochran Pharmacy–Berwick, Inc.* (1967), 11 Ohio St.2d 38, 42, 40 O.O.2d 52, 54, 227 N.E.2d 603, 607.

"Where danger to others is likely to attend the doing of certain work, unless care is observed, the person having it to do, is under a duty to see that it is done with reasonable care, and cannot, by the employment of an independent contractor, relieve himself from liability for injuries resulting to others from the negligence of the contractor or his servants." *Richman Bros. v. Miller* (1936), 131 Ohio St. 424, 6 O.O. 119, 3 N.E.2d 360, at paragraph one of the syllabus. See

*Bohme, Inc. v. Sprint Internatl. Communications Corp.* (1996), 115 Ohio App.3d 723, 733, 686 N.E.2d 300, 306; *Nagorski v. Valley View* (1993), 87 Ohio App.3d 605, 622 N.E.2d 1088, citing *Richman Bros.*

R.C. 4101.11 requires every employer to provide a safe work place for its employees. Beyond providing a safe place of employment for employees, R.C. 4101.11 also extends its protection to "frequenters." R.C. 4101.12 further forbids an employer from failing to "do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

It is my belief that it is the focus by the majority on recent case law developments, which explore the exceptions to this general rule, that leads the majority to the affirmative conclusion with which I am forced to respectfully disagree. One such exception to this rule is created where the inherently dangerous condition on the property is obvious to anyone upon reasonable inspection. *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629. Another exception to this rule exists "to any inherent hazards necessarily present because of the character of the work to be done" by the contractor or subcontractor. See *Schwarz v. Gen. Elec. Realty Corp.* (1955), 163 Ohio St. 354, 56 O.O. 319, 126 N.E.2d 906, paragraph one of the syllabus. The Supreme Court of Ohio has held that a construction site is inherently dangerous. *Bond v. Howard Corp.* (1995), 72 Ohio St.3d 332, 336, 650 N.E.2d 416, 420. At the time of appellant's alleged injury, the premises of DP&L where this accident occurred *was not* a construction site within the meaning of *Bond*.

An exception to the *Wellman* rule is that the owner, or general contractor, may again become liable if it participates in the inherently dangerous work of that subcontractor. *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326; *Sopkovich v. Ohio Edison Co.* (1998), 81 Ohio St.3d 628, 693 N.E.2d 233.

However, it must be remembered, the *Wellman* rule is an exception to the general rule imposing a duty on the owner to provide a safe work place for frequenters. The *Hirschbach* rule is *an exception to an exception.* It is at this juncture that I am particularly disturbed by the analysis and judgment of the majority.

The degree of participation, or lack of participation, in appellant's work by DP&L is simply not the issue in this case. The general rule is that the premises owner must provide a safe working environment. Recovery by a business invitee, or frequenter, from the premises owner may be had only if the owner has actual or constructive knowledge of the existence of the hazardous condition which caused the injury. See *Davis v. Shutrump Co.* (1942), 140 Ohio St. 89, 23 O.O. 299, 42 N.E.2d 663. However, an owner or employer also has a duty "to exercise reasonable care to protect all frequenters, including independent contractors,

from unreasonably dangerous conditions of which the employer has, or upon reasonable inspection, should have knowledge." *Cyr v. Bergstrom Paper Co.*, 3 Ohio App.3d 299, 3 OBR 345, 444 N.E.2d 1349, at paragraph one of the syllabus. "The existence of hazards which could be eliminated by the exercise of ordinary care by those in custody and control of the premises cannot be considered as inherent hazards necessarily present because of the character of the work to be done." *Parsons v. Blount Bros. Constr. Co.* (C.A.6, 1960), 281 F.2d 414, 417, rejecting the conclusion reached in *Schwarz, supra.* See, also, Prosser & Keeton, The Law of Torts (5 Ed.1984) 510–511.

In the lead opinion it is conceded that the DP&L boiler room was no longer a "construction site" when appellant began his painting tasks. In *Michaels v. Ford Motor Co.* (1995), 72 Ohio St.3d 475, 650 N.E.2d 1352, Ford escaped liability where an employee of an electrical subcontractor fell through a hole because the general contractor still controlled the construction site. Here Enerfab, the contractor who installed the new pipe and conduit for the appellee, had returned control of the boiler room to DP&L before the appellant began his painting of the new pipes.

I do not find the painting of the subject pipes in the case *sub judice* to be an inherently hazardous activity. The appellee argues that there are inherent hazards to working around an active boiler. The lead opinion notes that this boiler room was "hard hat" territory, stating that we must look to the totality of the work environment when making a determination whether the work activity was inherently hazardous, thereby relieving the premises owner of liability. However, the appellant did not burn his hand on a hot pipe, nor did he bump his head while painting in a tight spot. He did not, as happened in a number of cases, reported and unreported, fall off a scaffold,[13] slip off a roof,[14] step into an open hole,[15] or fall off a ladder.[16] Indeed, there is no identifiable negligence on the part of the appellant in this case. He was almost flat on the floor of the boiler room, wearing the required safety equipment (the hard hat) and painting a pipe, when this loose pipe fell from the ceiling onto his head.

The majority would have us believe that all work in an environment where there is an active boiler is inherently dangerous, thereby allowing DP&L to avoid

---

13. *E.g., Hesselbach v. Toledo Museum of Art* (1995) 72 Ohio Misc.2d 33, 655 N.E.2d 831.

14. *E.g., Burnep v. Labmark* (June 17, 1999), Franklin App. No. 98AP–962, unreported, 1999 WL 394201.

15. *E.g., Bond, supra.*

16. *E.g., Hernandez v. Martin Chevrolet, Inc.* (1995), 72 Ohio St.3d 302, 649 N.E.2d 1215.

the general duty, imposed both by statute and the common law, to provide a safe workplace. I cannot agree with this interpretation of the law.

The lead opinion cites *Wheeler v. GTE N., Inc.* (June 22, 1995), Jackson App. No. 94CA744, unreported, 1995 WL 392871, in support of its position. In *Wheeler*, a contractor working for a television cable company was removing coaxial cable from the GTE poles, which poles were leased from GTE by the cable company. A rotted telephone pole collapsed under the weight of the contractor's employee. When the employee sued GTE, the trial court denied his claim, granting GTE's motion for summary judgment. This court reversed. We found that the employee might expect to encounter dangers in his work from live wires, or from falling from a pole. We also found, however, that the employee should not expect a pole to collapse beneath him, for the industry did not view that hazard as an inherent risk of the job. Our rationale in *Wheeler* remains viable and supports the position of the appellant in the case *sub judice* rather than the position advanced by the appellee.

The following cases supply additional guidance in the analysis of these issues: *Kline v. Ohio Univ.* (1990), 62 Ohio Misc.2d 704, 610 N.E.2d 1205; *Stasiak v. Schindler Elevator Corp.* (Sept. 1, 1994), Richland App. No. 93–CA–104, unreported, 1994 WL 527967; *Cogar v. Scheetz Constr. Co.* (Jan. 14, 1998), Summit App. No. 18501, unreported, 1998 WL 34608.

In *Kline*, Ohio University hired Kline's employer to remove asbestos from steam tunnels running beneath campus. While inspecting one of the tunnels, Kline was shocked when he encountered exposed electrical wiring. The Court of Claims concluded from the record that Ohio University employees had removed insulation from the wiring for a temporary electrical feed and had not taped, or replaced, this missing insulation. Thus, the university breached its duty to Kline as a business invitee and was liable for his injuries.

In *Stasiak*, the plaintiff was a state elevator inspector. Inspecting a hydraulic system on an elevator, he was injured by an unguarded cable. The Fifth Appellate District reversed a grant of summary judgment to the defendants, finding that a jury question existed as to whether the defendants were liable for removing the cable guard.

In *Cogar*, the plaintiff was an employee of a janitorial service. She cleaned a building leased by defendant Akron Auto from defendant Scheetz. On the day of Cogar's injury, Scheetz had begun an extensive remodeling project to this building. Normally, Cogar would collect trash in bags, then step out a back maintenance door to pile the bags near a dumpster. However, a contractor for Scheetz had removed the back step to the building, causing Cogar to fall. The Ninth Appellate District, reversing summary judgment in favor of Scheetz, found a material question of fact as to whether the building owner met its duty to

maintain a safe work environment for Cogar, a business invitee. Obviously, that court found that taking out the trash was not so inherently dangerous an activity as to preclude recovery, even while remodeling and construction occurred at this office building.

Therefore, I, too, find that there exists a material question of fact as to whether DP&L met its duty to provide a safe work place for the appellant. Clearly, inspection of the boiler room would have been in order by DP&L subsequent to the completion of Enerfab's work. There is a material question of fact whether DP&L would have discovered the hanging pipe upon a reasonable inspection of the boiler room after Enerfab completed its work. There is even a material question of fact as to whether any inspection of the boiler room took place subsequent to Enerfab's departure from the premises.

The appellee also questions whether appellant established that his claimed injuries were the result of this accident. However, that, too, is a question of fact that is not, and should not be, before us at this stage of the proceedings, a review of the trial court's summary judgment decision. Such factual questions are best left to the jury.

Accordingly, I would reverse the decision of the trial court and remand for further proceedings.